SUCCESSORS OF M. LAMADRID & CO., PLAINTIFFS AND APPELLANTS, *v.* TORRENS, MARTORELL & CO. ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan in an Action of Debt.

No. 2053.—Decided July 31, 1920.

EXCUSSION — PARTNERSHIP — PRIVATE PROPERTY OF PARTNERS — ATTACHMENT — EXECUTION.—A member of a mercantile partnership is considered, for all practical purposes, as a joint debtor with the partnership, and may therefore be included as a defendant in an action of debt against the partnership; and in order to reserve his right to excussion granted by section 237 of the Code of Commerce, it will be sufficient if the judgment provide that the private property of the defendant partner shall be levied on and sold in execution of the judgment only in the event that the marshal returns the writ stating that no property of the partnership had been found or that the property levied upon was not sufficient to satisfy the judgment.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for the appellants.

*Mr. L. Llorens Torres* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Successors of M. Lamadrid & Co. brought suit against Torrens, Martorell & Co. and Miguel Martorell Torrens, as managing partner, for a debt contracted by the defendant firm.

The complaint alleged, among other things, that the defendant firm had ceased business, closed the establishment and offices, without notice to creditors or payment of debts,

and removed and concealed the merchandise on hand, without providing for liquidation or leaving any one in charge to deal with creditors, meet their demands or settle the obligations of the firm.

Plaintiffs prayed for judgment against both defendants severally in the sum of $2,589.65 together with interest at the legal rate from the date of the filing of the complaint, the said recovery to be made out of the property of defendant Miguel Martorell in default of that of the said debtor firm, together with the expenses and costs of this suit, including attorney's fees.

The defendant firm defaulted. The partner answered, denying the facts alleged in the complaint, and after trial the district court rendered judgment against the firm for $2,589.65, together with interest, costs and attorney's fees, "without prejudice to the institution of any other action that plaintiffs may have against the members of the defendant partnership after discussion of the assets of the firm."

Plaintiffs appeal from this judgment in so far as the same fails to determine the claim against Miguel Martorell or to adjudge that the plaintiffs should have and recover of the said Martorell, as a partner of the defendant firm and severally liable therewith, the amount demanded in the complaint, together with such other pronouncements as were contained in the said judgment against the firm.

The theory of the court below and the view there taken of the evidence adduced are outlined by the trial judge as follows:

"Plaintiffs introduced at the trial documentary evidence consisting of the deed executed before notary José de Guzmán Benítez on October 20, 1917, by Freiría Hermanos, M. Pascual & Co., Malgor, Luiña & Co. and M. Lamadrid & Co. whereby the three firms sell to M. Lamadrid & Co. their accounts against Torrens, Martorell & Co. for the same amounts alleged in the complaint. And on this point defendant Martorell expressly admitted at the trial that the firm of Torrens, Martorell & Co. owe the said amounts to

the plaintiffs. The fact is well established. It is true that now in arguing the case the defendant alleges that his admission does not affect the partnership of Torrens, Martorell & Co., inasmuch as the admission of a partner after the partnership is dissolved does not affect the firm. But this defendant has forgotten two things: That he has proved that the partnership is in liquidation and that he himself is one of the liquidators. And if the partnership is in liquidation it has not been dissolved; and if he is a liquidator his admissions as to any debts of the partnership liquidated by him are effective and bear no similarity whatsoever to admissions made by a partner who is not a liquidator as to the debts of a dissolved partnership.

"It was shown that the defendant partnership did not keep accounts in form, but in some memorandum books without following a legal method.

"It has not been shown in a manner convincing to the court that this defendant partnership has concealed its property and not paid its general creditors. The averment of the plaintiffs that the partnership of Torrens, Martorell & Co. has not been put in liquidation, nor designated a person to liquidate its accounts, has not been proved; but on the contrary it was shown by the defendants by means of the deed of September 12, 1917, executed before notary Nemesio Canales (Exhibit 2 of the defendant) that a liquidation was formed wherein the three partners Miguel Martorell Torrens, Juan Luis Torrens and Luis Martorell were placed in charge of the liquidation of the partnership. That deed appeared to have been recorded in the mercantile registry of San Juan on October 6, 1917, or 16 days prior to the filing of the original complaint, and this record is a sufficient notice of the existence of the liquidation. ·

"When a mercantile partnership is in liquidation, according to the Code of Commerce, its personality as such partnership subsists as to the collection of credits, extinction of obligations contracted previously and the closing of pending transactions. (See section 228 of the Code of Commerce.) The liquidators represent the partnership for these purposes and the partnership in liquidation continues existing for such effects.

"It has not been shown at this trial that the partnership of Torrens, Martorell & Co., has no property with which to pay its obligations, nor that its liquidation has been concluded and sufficient property has not remained to cover the liabilities.

"The fact that one or more witnesses testified before the court that in the store of the partnership there were only some bottles and some boxes of matches does not prove the insolvency of the defendant partnership; because aside from the fact that said witnesses were unable to testify positively as to whether there were other goods in the store, what they have testified does not show that the defendant did not have other personal property, credits, etc.

"It has not been shown that the said defendant partnership has concealed its property and even in case there were sufficient proof to establish the fact that goods of the store (the quantity of these being unknown) were transferred to the house of one of the partners and liquidators, we do not think that this would be a fraudulent concealment unless it was shown that the said goods had been made to disappear and that they were privately sold outside of the course of the liquidation.

"Under these circumstances the court would commit a serious error in permitting an action against one of the general partners of Torrens, Martorell & Co. whose legal situation is that of 'in liquidation' unless the fraudulent removal and concealment of the property or the insolvency of the said partnership were shown and not prior to the excussion of the property of Torrens, Martorell & Co."

In disposing of an appeal from an order overruling a motion to quash an attachment levied on property of defendant Martorell, we said:

"If article 237 of the Code of Commerce may be invoked at all in a suit brought not only against the firm but also directly against the member who claims the benefit of discussion, and in which the sworn complaint charges, not on information and belief but as a fact within the personal knowledge of plaintiff, the cessation of business, the closing of doors, the removal and concealment of goods and the unavailing demands made upon both the firm and the said member,—then we think that such averment together with a good and sufficient attachment bond is a substantial *prima facie* compliance with the requirement as to discussion of the assets of the firm.

"See also *Royal Bank of Canada* v. *A. McCormick & Co. et al., ante,* page 383.

"Certainly, this view of the matter places no greater burden

on the partner, who is jointly and severally liable for the debts of the firm, than is laid by law upon the surety, who, although not so bound, if he would 'avail himself of the benefit of a levy against the principal,' must point out property subject to seizure and sale belonging to such principal." *Successors of M. Lamadrid & Co. v. Martorell*, 27 P. R. R. 551.

The facts so held to constitute an adequate discussion of the assets of the firm for the purpose of sustaining an attachment levied on the property of a member thereof were established by the evidence for the plaintiffs and the *prima facie* case so made, in the absence of any explanation or effort to contradict the same and even though it were not strengthened rather than weakened by the evidence for defendant, is a sufficient discussion of the partnership property to support a judgment in the form indicated in the prayer of the complaint.

It seems that the defendants were cited to produce the books kept by the firm.

Miguel Martorell appeared as witness for the plaintiffs and as managing partner of the defendant firm with one small account book which he said another partner, Luis Torrens, had told the witness was the only book the defendant firm "had." Pressed upon this point, the witness first repeated that this was the only book given him by the other partner, Luis Torrens, and finally stated such book to be the only one that the firm "has."

Pedro Pagán, former book-keeper for the defendant firm, testified that he kept the accounts of the firm in three books, none of which were duly authenticated; that the defendant firm never paid for the goods bought from the plaintiffs herein and from various other concerns; that such goods did not remain in the place of business of the defendant firm, but were removed to and kept in the dwelling of defendant Miguel Martorell; that they were so removed in September, 1917, and that the stock left in the store consisted of a small

quantity of matches; that the store remained open, but business had ceased and the firm paid none of its accounts; that the store continued open in this way until May, 1918.

Victorio Ochoa, managing partner of M. Lamadrid & Co., stated that the purchases made from the plaintiff firm were negotiated by defendant Miguel Martorell; that the plaintiffs had repeatedly written to the defendant firm and defendant Miguel Martorell without receiving any answer and drafts drawn against them had been dishonored; that the witness at one time visited the store of the defendants and the stock on hand at that time, consisting of bottles and matches, would not have amounted to more than $200 or $250; that afterwards the witness again visited the place of business of the defendants and found the place closed; that the witness has looked elsewhere and investigated and has been unable to find any other property except a small house worth perhaps $150; that it is a commercial custom when a firm is dissolved to send out a circular announcing that certain persons have taken charge, and that the plaintiffs had received no notice that the defendant firm was in liquidation.

Heraclio López, a merchant and agriculturist of Dorado, stated that he had seen the books kept by Torrens, Martorell & Co. on different occasions in settling his accounts with the firm; that the said firm kept three books; that the book shown to the witness was not one of these and had never been seen by the witness among those examined by him; that from and after the month of September, 1917, the defendant firm carried nothing, or very little, in stock; that some of the goods were sold and others removed from the place of business during the latter part of September, 1917, only a few matches and cans remaining in charge of the clerk, Pedro Pagán; that at the time of the trial, September, 1918, the store had been closed some six or seven months; that Torrens, Martorell & Co. have no property except a

small house that they have offered to sell to an employee of the witness; that the three partners have property, but that there is nothing in the name of the firm; that the firm has nothing with which to pay its debts.

Alfredo López, a merchant of Dorado, says that Torrens, Martorell & Co. have nothing; that the witness had done some business with the defendant firm and that in September, 1917, the stock on hand was about exhausted, although the store was kept open, containing only a few matches; that some of the goods were removed before the month of September; that the witness saw the goods removed to the dwelling occupied by the Martorells; that up to the middle of 1918 there remained some matches, a little vinegar and a boy who had nothing to do; that the store was closed and afterwards the building was rented to others; that except the small house the defendant firm has no property in Dorado.

José Comas, an expert accountant, was called to examine the little book produced by the defendants in response to the subpoena *duces tecum,* whereupon the following incident occurred:

"Pltf.: Please look at that book and say how it is classified as a mercantile book. Really as a mercantile book.

"Dft.: We have admitted the said debts and also admit that the firm of Torrens, Martorell & Co. did not keep mercantile books by the system of double entry, but memorandum books of this kind, and that this is what was left of these memorandums.

"Pltf.: But I wish to prove that this is not a book of mercantile book-keeping.

"Dft.: We admit that. I admit that the expert would testify that this book is not kept in form and that it is not a book of mercantile book-keeping.

"Pltf.: I wish that it be examined to see if there is any account of M. Lamadrid & Co.

"Dft.: We have admitted that account.

"Pltf.: My object is to prove that the books have disappeared.

"Dft.: We admit that that is the only memorandum remaining of those kept by Torrens, Martorell & Co."

Defendants introduced in evidence the articles of partnership executed in January, 1917, by Miguel Martorell, Luis Torrens and Luis Martorell, containing the following clauses:

"D. The period of the duration of this partnership shall be five years from February 1, 1916, the effects of this public instrument to be retroactive to that date and the said instrument to become effective from that date and to cover all transactions made up to this date.

"E. Debts or credits of any of the partners contracted prior to February 1, 1916, shall figure in the individual account of each and in no way affect the partnership capital contributed as hereinafter provided, or any of the sums existing as debts in favor of any partner or partners, or that portion that may belong to the partner owning same prior to that date.

"*Second.* The capital of this firm shall consist of the sum of one thousand dollars which is contributed by the managing partner, Miguel Martorell, in a returnable character, the said sum to be returned by the firm to Miguel Martorell on the last day of June, 1917, without interest, the goods of the firm remaining liable until its entire extinction.

"*Seventh.* The firm shall do no business in excess of its capital, except by unanimous agreement of all the partners, and the partnership is forbidden to sign any securities or bonds."

The instrument of dissolution, also introduced by defendant and dated September 11, 1917, recites—

"That the actual condition of the partnership, taking into consideration the existing merchandise, the outstanding accounts, the value of two houses, personal property, and the amount of business, shows a balance amounting to five thousand dollars, also including the money in cash. And that the liabilities amount to three thousand dollars, there being a balance of two thousand dollars which is the profit or benefit belonging in equal parts to the three partners."

Thus far we have assumed, without any apparent necessity and solely for the sake of argument, that a judgment and execution thereunder in the form suggested, without

more, would not satisfy the statutory requirement and that notwithstanding the failure of the defendant partner to take the initiative in this regard, or even to claim in his answer the benefit of discussion, the burden is on the plaintiffs to show at the trial and before judgment that the firm has not sufficient property to satisfy the amount of such judgment.

In 18 Corpus Juris at page 1138 we find the following definition:

"Discussion.—In the civil law a proceeding, at the instance of a surety, by which the creditor is obliged to exhaust the property of the principal debtor, toward the satisfaction of the debt, before having recourse to the surety; the seizure and sale of the property of the principal to satisfy the demand against him, before proceeding against that of the surety."

As defined by Escriche, vol. 2, page 929, discussion is—

"The legal proceeding brought against the property of the principal debtor before proceeding against the property of the surety to recover from him the balance which the property of the debtor will not cover."

Primarily, it is a doctrine of the law of suretyship adopted and incorporated into the Code of Commerce in a somewhat modified and restricted form. A member of a partnership is not a mere surety, but is made jointly and severally liable for the debts of the firm, subject only to the benefit of discussion reserved by the terms of section 237, the Spanish version of which reads as follows:

"*Artículo 237.—Los bienes particulares de los socios colectivos que no se incluyeron en el haber de la sociedad al formarse ésta, no podrán ser ejecutados para el pago de las obligaciones contraídas por ella, sino después de haber hecho excusión del haber social.*"

The partner is thus placed, to all practical intents and purposes, in the position of a surety who signs as "surety and principal debtor," thereby making himself liable jointly and severally with his principal. It would seem to follow

that in a suit against the partnership and an individual member of the firm a provision in the judgment for the levy of execution, first against the partnership property and then against that of the defendant partner only in the event of a return of *nulla bona,* or in order to satisfy any deficiency after seizure and sale of the partnership assets, is a sufficient discussion of such assets.

Indeed, at the time of deciding the former appeal it was thought by those members of this court most familiar with the Spanish practice that under the former regime, after judgment and execution against the firm, if no partnership assets were found, the property of the individual members might then be seized and sold even though none of such members had been made a party.

As indicated in the previous opinion above mentioned, there is a remarkable paucity of precedent in the Spanish jurisprudence, and it seems to have been assumed rather than decided by the courts of Spain that the benefit of discussion enjoyed by the members of a commercial partnership is, if anything, much more limited than in the case of a surety.

Although this question was left open to a large extent on the previous appeal, the opinion of the trial judge throws no new light on the subject and the appellees herein have not even filed a brief.

Much the same situation as exists in this Island seems to have developed in the Philippines, and the Supreme Court there has reached about the same conclusion intimated rather than definitely announced on the former appeal in the instant case.

In *Vargas & Co.* v. *Chan Hang Chiu,* 29 Philippine Reports, 446, it was contended that Vargas & Co. being a partnership, it was necessary in an action against them to serve the summons on all of the partners and that the summons having been served on the managing agent only, the service

was of no effect against the company and the members thereof.

The court held in substance that a partnership is a legal entity capable of suing and being sued in the company name, and that in an action against such company it is not necessary to make the partners thereof parties defendant.

In *De los Reyes* v. *Lukban and Borja,* 35 Philippine Rep., 757, the same court held that partners who had not been made parties in a suit against the partnership might be sued individually to collect the amount of an unsatisfied judgment against the firm. The case does not hold that the same result might not have been achieved by timely execution against the individual partners after a return of *nulla bona* on a writ against the firm, although for the purposes of the present opinion the point may be conceded. Nor is it remotely intimated that the individual partners would not have been proper parties defendant in the action against the firm. The dissenting opinion was based on the ground, among others, that under the Spanish practice, unaffected by the change of sovereignty, an *alias* execution against the individual partner was enough; that a new suit was not permitted and if brought was not a new cause of action, but merely an alternative method of enforcing the original judgment.

The substance of the majority opinion is set forth in the syllabus as follows:

"The creditor, who has not succeeded judicially in recovering a debt owing him by a general copartnership, on account of its insolvency, has a right to sue the partners thereof in the manner provided by article 127 of the Code of Commerce, inasmuch as each and all of the copartners are personally and severally liable with all their property for the result of the transactions made in the name and for the account of the partnership, under the signature of the latter, and by a person authorized to make use thereof.

"The attachment of the property, a condition required by article 237 of the same code, before proceeding against the private property

of the copartners, is considered to have. been effected when, by the return of the sheriff of the levy of a writ of execution, it appears that the dissolved debtor copartnership has absolutely no assets of its own, and when the partner, subsequently individually sued, is unable to prove that the partnership of which he was a member actually has other property.

"Although as between an action prosecuted against a copartnership for the recovery of a credit and an action brought against the partners personally to recover the unpaid balance of the said credit there be perfect identity as to the cause of action and the thing claimed, yet if the parties defendant are different and their capacity as such also, as when the first action is brought against the debtor partnership, and the second, individually, against those who were partners thereof, this second action can not be claimed to be *res judicata* by virtue of the judgment rendered in the first action, pursuant to the provisions of article 1252 of the Civil Code and section 307 of the Code of Civil Procedure."

The interesting feature of the dissenting opinion and the only aspect thereof with which we are at present concerned is found in the following paragraph:

"The third question which presents itself is: Even admitting the right of the plaintiff to maintain an action on the old judgment, is the remedy of the plaintiff a *new* judgment against the members of the *partnership personally* or is it the execution of the *old* judgment against them? Under the law and procedure existing in this jurisdiction prior to American occupation, a new judgment against the members of the firm personally under circumstances such as appear in this case was not permitted. The first step required of a plaintiff who had a judgment against a partnership of the character described in this action was to execute the judgment as far as possible against the property of the partnership; and, after that was exhausted, to proceed, by execution, against the property of the individual members under the *same judgment*. It was not necessary, nor was it permitted, to bring a new action against the members of the firm personally on the old judgment and obtain a new judgment against them. That procedure has not been changed by any legislation since American occupation and that is the practice to-day."

In the case of *Hongkong & Shanghai Banking Corporation v. Aldecoa & Co., in liquidation, Joaquín Ibáñez de Aldecoa y Palet, Zoilo Ibáñez de Aldecoa y Palet, Cecilia Ibáñez de Aldecoa y Palet, and Isabel Palet de Gabarro. William Urquhart, intervener and appellant,* 30 Philippine Report, 257, the nature of the action and of the judgment are briefly outlined in the first two paragraphs of the opinion, thus:

"This action was brought on January 31, 1911, by the plaintiff bank against the above-named defendants for the purpose of recovering from the principal defendant, Aldecoa & Co., an amount due from the latter as the balance to its debit in an account current with the plaintiff, and to enforce the subsidiary liability of the other defendants for the payment of this indebtedness, as partners of Aldecoa & Co., and to foreclose certain mortgages executed by the defendants to secure the indebtedness sued upon.

"Judgment was entered on the 10th of August, 1912, in favor of the plaintiff and against the defendants for the sum of 344,924.23 *pesos,* together with interest thereon at the rate of 7 per cent per annum from the date of the judgment until paid, and for costs, and for the foreclosure of the mortgages. The court decreed that in the event of there being a deficiency, after the foreclosure of the mortgages, the plaintiff must resort to and exhaust the property of the principal defendant before taking out execution against the individual defendants held to be liable *in solidum* with the principal defendant, but subsidiarily. Judgment was also entered denying the relief sought by the intervener. All of the defendants and the intervener have appealed."

In disposing of the contention of Aldecoa & Co. the court said:

"The bank is not trying to foreclose, in this section, any mortgages on real property executed by Aldecoa & Co. It is true that the bank sought and obtained a money judgment against that firm, and at the same time and in the same action obtained a foreclosure judgment against the other defendants. If two or more persons are *in solidum* the debtors of a third person, and one or more of such debtors mortgage any of their real property situate in the jurisdiction of the court, the creditor, in case his obligation is not paid

at maturity, may include all of the solidary debtors in the same suit and secure a joint and several judgment against them, as well as judgments of foreclosure upon the respective mortgages.''

Appellant Isabel Palet, ''one of the general or 'capitalistic' members of the firm,'' assigned as error, among other things—

''That the court erred in refusing to order for the benefit of this appellant that the property of Aldecoa & Co. should be exhausted before the plaintiff firm should be entitled to have recourse to the property of this defendant and appellant for the satisfaction of its judgment.''

Speaking of this contention, the court says:

''This appellant does not contend that she is not personally liable *in solidum* with Aldecoa & Co. for the liability of the latter firm to the plaintiff in the event that the appeal taken by Aldecoa & Co. should be unsuccessful. We have just held that the judgment appealed from by Aldecoa & Co. should be affirmed. But Doña Isabel Palet does contend that her liability as a partner for the obligations of Aldecoa & Co., although solidary, is subsidiary, and that she is entitled to insist that the property of Aldecoa & Co. be first applied in its entirety to the satisfaction of the firm's obligations before the bank shall proceed against her in the execution of its judgment.

''The trial court directed that the mortgaged properties, including the properties mortgaged by this defendant, should be sold under foreclosure in the event that Aldecoa & Co. should fail to pay into court the amount of the judgment within the time designated for that purpose. The court recognized the subsidiary character of the personal liability of Doña Isabel Palet as a member of the firm of Aldecoa & Co. and decreed that as to any deficiency which might result after the sale of the mortgaged properties, execution should not issue against the properties of Doña Isabel Palet until all the property of Aldecoa & Co. shall have been exhausted. The properties mortgaged by Doña Isabel Palet were so mortgaged not merely as security for the performance of her own solidary subsidiary obligation as a partner bound for all the debts of Aldecoa & Co., but for the purpose of securing the direct obligation of the firm itself

to the bank. We are, therefore, of the opinion that the trial court committed no error upon this point.''

And in discussing another assignment the court again points out:

''Doña Isabel Palet is a personal debtor jointly and severally with Aldecoa & Co. for the whole indebtedness of the latter firm to the bank, and not a mere surety for the performance of the obligations of Aldecoa & Co. without any solidary liability.''

From a separate opinion disposing of another aspect of the same case we quote the following:

''The question is presented, could the mother of the three children legally bind them as industrial partners of the firm of Aldecoa & Co. under the above facts? If so, are they liable jointly and severally with all their property, both real and personal, for the debts of the firm? That all industrial partners of an ordinary general mercantile partnership are liable with all their property, both personal and real, for all the debts of the firm owing to third parties precisely as a capitalistic partner has long since been definitely settled in this jurisdiction, notwithstanding provisions to the contrary in the articles of agreement. (*Compañía Marítima* v. *Muñoz,* 9 Phil. Rep. 326.)''

And later, in the same opinion, the court says:

''But it is said that the prohibition of article 164 extends to real property only and that, therefore, the children are subsidiarily liable as industrial partners to the extent of their personal property. This proposition rests upon the theory that the mother could have freely disposed of the child's personal property in 1896 and that the only recourse open to them would have been an action against their mother for the value of such property. If this theory be true, the result would not be changed for the reason that the children were either industrial partners or they were not. If they were, they are liable to the extent of both their real and personal property for the debts of the firm. If they were not, they are in no way liable.''

In *Compañía Marítima* v. *Muñoz, supra,* cited and followed in the case last above mentioned, at page 338 the same court says:

"It is apparently claimed by the appellee in his brief that one action can not be maintained against the partnership and the individual partners, this claim being based upon the provisions of article 237 of the Code of Commerce which provides that the private property of the partners shall not be taken until the partnership property has been exhausted. But this article furnishes no argument in support of the appellees' claim. An action can be maintained against the partnership and the partners, but the judgment should recognize the rights of the individual partners which are secured by said article 237."

And in *Sunico* v. *Chuidian,* 9 Phil. Rep. 625, we find the following:

"In support of the first assignment of error as well as of the third, it is said that the appellee was not entitled to judgment against the appellant, an individual member of the partnership, in the same action in which judgment was rendered against the partnership itself, because under the provisions of article 237 of the Code of Commerce execution will not issue on the individual property of partners (of a *compañía colectiva*) until the partnership property has been exhausted.

"But article 127 of the Code of Commerce provides that—

"'All the members of the general copartnership, be they or be they not managing partners of the same, are *personally and jointly liable with all their property* for the results of the transactions made in the name and for the account of the partnership    *    *    *.'

"And article 1144 of the Civil Code provides that—

"'A creditor may sue any of the joint debtors or all of them simultaneously    *    *    *.'

"These provisions clearly establish the right of a creditor of the partnership (*compañía colectiva*) to bring his action against the individual partners and the partnership at the same time; and this right is not taken away by the provisions of article 237 of the Code of Commerce, because the rights secured therein can be and should be recognized and protected in the judgment. (*La Compañía Marítima* v. *Muñoz.*) In the case at bar the provision for the suspension of execution on appellant's judgment, and its satisfaction from the amount which the appellee's participation in the proceeds of the liquidation of the partnership assets shall be found to fall short of the total amount for which judgment is allowed him against the

partnership, seem to afford an eminently practical recognition and mode of preservation of the rights of both parties, and should not be disturbed."

Section 1111 of our Civil Code reads as follows:

"A creditor may sue any of the joint debtors or all of them simultaneously. The actions instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full."

The judgment appealed from, in so far as it denied the right of plaintiff to recover from defendant Miguel Martorell in the present action the amount of the indebtedness owed by the firm, subject only to proper conditions as to the order, manner and form of execution, must be reversed, and in lieu thereof the judgment of this court containing the pronouncements indicated in the prayer of the complaint should be entered in favor of the plaintiffs and against the said defendant partner.

*Reversed in part.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Wolf dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF.

My dissent in this case is based on the ground that, as a general rule, an individual partner cannot be joined in a suit against the firm on a partnership liability and, furthermore, that if there is an exception like insolvency the complainants did not bring themselves within the exception.

Section 237 of the Spanish Code of Commerce provides (translation mine):

"The private property of the general partners, not included as part of the assets on the formation of the partnership, cannot be seized in execution for payment of the debts of the partnership until discussion of the assets of the partnership has been had."

The majority opinion, as I understand it, accepts this provision of the Code of Commerce, but holds that it is no obstacle to joining a general partner in a suit against the firm. The court decided in effect that the judgment rendered against both the firm and the individual partner does not operate equally against them and that no execution can proceed against the property of the individual partner until a discussion of the assets of the partnership has been had. My contention, however, is that, barring possible exceptions like insolvency, the liability of an individual partner is a conditional and not a pure one and that the condition is only fulfilled after a discussion of the assets has been had and hence that he is not individually liable to suit before discussion. The judgment against the partnership, followed by a discussion, makes the property of the general partners subject to execution without the necessity of an independent suit, both according to section 237 of the Code of Commerce, *supra,* and section 127, as follows:

"All the members of the general copartnership, be they or be they not managing partners of the same, are personally and jointly liable with all their property for the results of the transactions made in the name and for the account of the partnership, under the signature of the latter, and by a person authorized to make use thereof."

A mere reading of these sections, it seems to me, is enough to show that the obligation of an individual partner is conditional and not pure, and hence he is entitled to the benefit of section 1081 of the Civil Code, as follows:

"In conditional obligations, the acquisition of rights as well as the extinction or loss of those already acquired, shall depend upon the event constituting the condition."

A creditor has no rights against an individual partner until the conditions established in sections 127 and 237 of the Commercial Code are fulfilled.

In Porto Rico, as in Louisiana, a partnership is an en-

tity similar to a corporation in the United States. That it is such an entity seems to be undisputed in Porto Rico and the cases in Louisiana which assert it are numerous: *Newman* v. *Eldridge*, 107 La. 315–320, where it was said that the firm is a legal entity distinct from its members; *Stothart* v. *W. T. Hardie*, 110 La., 696, where it was said that a partnership was defined as a contract creating a distinct person from those who compose it. Similar and even stronger pronouncements are to be found in *Paradise* v. *Gerson*, 32 La. Annual, 532; *Raymond* v. *Palmer*, 41 La. Annual, 433; *The Succession of Pilcher*, 39 La. Annual, 362.

It is true that partners are bound *in solido,* but *in solido* only means that each partner is ultimately bound and does not change a conditional obligation to a pure one until the condition is performed. The words *"in solido"* also mean that each partner is equally bound among themselves, but such words necessarily do not mean that the liability of an individual partner is equal to or runs parallel to the liability of the firm itself, especially before discussion. The majority opinion relies on cases from the Philippines, but these cases do not show the steps by which the Philippine court arrived at its conclusion and hence do not satisfy my mind.

Also the majority opinion refers to section 1111 of our own Civil Code as follows:

"A creditor may sue any of the joint debtors or all of them simultaneously. The action instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full."

Of course, if a partner is a joint debtor with the firm there is no doubt that under various provisions of the codes all or any of the joint debtors may be sued, but if, on the other hand, as I maintain, his obligation is conditional, he is not a joint partner in the sense of the statute. He has

no individual liability and no joint liability until after discussion. Section 1111 lays down the general rule which, under familiar principles of legal interpretation, would have to yield to the more specific provisions of a special law like the Code of Commerce.

I regret that I did not have before me at the time of the consultation over this case section 1600 of the Civil Code. It is as follows:

"Partners are not jointly bound with regard to the debts of the partnership, and none of them can bind the others by a personal act, if they have not granted him a power therefor.

"The partnership is not liable with regard to third persons for an act which one partner may have performed in his own name or without a power from the partnership therefor; but it is liable to the partner in so far as said acts have benefited said partnership.

"The provisions of this section shall be understood without prejudice to the provisions of rule first of section 1597."

This section is taken from the chapter on Partnership and is harmonious with the provisions of the Code of Commerce. It distinctly says that partners are not jointly bound with regard to the debts of the partnership. Any force which section 1111 might have to make persons in general jointly liable would be overcome in a case of partners by the distinctive provision of section 1600.