## SMITH *v.* McMICKEN.

3   319
52   1365

3   319
110   700

Where a debt due to a partnership had been transferred by a member charged with the liquidation of its affairs, but who was without authority to make such a transfer, and the other partners subsequently ratify the act, they being thereby estopped from questioning the authority of the liquidating partner, any creditor, who by seizing their interest in the debt, pretends to hold under them, will be also estopped from questioning it.

A judgment creditor of persons who were members of a partnership then in a state of liquidation, for a debt not a debt of the partnership, cannot seize under a *fi. fa.* a judgment which was an asset of the partnership, nor acquire any legal rights by seizing the interest therein of the individual partners, the defendants in the execution.

An individual creditor of a partner cannot seize under a *fi. fa.* a particular asset of the partnership, nor the interest of his debtor in a particular partnership asset. He must await the liquidation of the partnership, and, in the meanwhile, seize the residuary interest of the partner in the partnership generally, by seizing in the hands of the partnership, or of the person charged with its liquidation and representing it. The partnership assets are a trust fund for the partnership creditors, who must be paid before the individual partners, and consequently their creditors, can receive any thing.

Partners under our law are not tenants in common, in the sense of that term in the english law.

APPEAL from the District Court of West Feliciana, *Penn*, J. *Pitot* and *Denis*, for the plaintiff. *Muse*, *Merrick* and *Phillips*, for the appellant. The judgment of the court was pronounced by

SMITH
*v.*
McMicken.

SLIDELL, J.*  In the year 1835, a commercial partnership was established in New Orleans, under the firm of *Peyroux, Arcueil & Co.*  Its members were *Sylvain Peyroux, L. R. B. Arcueil, L. A. Barjac*, and *Wm. A. Dawson.* This firm went into liquidation in 1839.  In that year a new firm was formed under the style of *Peyroux, Arcueil & Co.*, composed of the following persons, *P. O. Peyroux, L. R. B. Arcueil, L. A. Barjac* and *F. Paul ;* so that only two of the partners of this new house, *Arcueil* and *Barjac*, were members of the old firm.  In 1839, the old firm of *Peyroux, Arcueil & Co.* brought suit against *Farrar* and wife, who had been for some years its debtors.  Judgments were obtained.

In March, 1844, *Arcueil*, professing to act under a power of attorney as liquidating partner of the old firm, which power contained no special authority to sell the assets, sold and transferred, for a valuable consideration, to *Boyle*, the judgments obtained by the old firm against *Farrar* and wife.  In the same month and year, *Boyle* transferred the judgments to *Smith*, the present plaintiff, and *Smith* has subsequently, and during the pendency of this cause, transferred them to the Consolidation and Citizens Banks, who are now the real plaintiffs in this action.

In 1844, *Charles McMicken*, the present defendant, being a creditor of the new firm of *Peyroux, Arcueil & Co.*, obtained a judgment against the new firm and its members, *P. O. Peyroux, Barjac, Arcueil* and *Paul*.  A writ of *fieri facias* was issued upon this judgment, upon which, as appears by the sheriff's return, he seized in July and August, 1844, the judgment against *Farrar* and wife, and the rights of the respective members of the new firm of *Payroux, Arcueil & Co.*, the defendants in execution in said judgments.  The property seized was advertized for sale, and *Smith* then applied for and obtained an injunction in the present suit, alleging his ownership of the judgments under the transfers by the old firm to *Boyle*, and by *Boyle* to himself. The defendant answered by a general denial, and also expressly denied that any valid and legal assignment of the judgments against *Farrar* and wife was ever made to *Boyle*, or to any other person.

Two points upon the merits are presented by the defendant : 1st. That no legal transfer from *Peyroux, Arcueil* and *Co.* to *Boyle* was ever made.  That the transfer made by *Arcueil* to *Boyle* was a nullity as to the partnership, and as to creditors of the firm or of any individual composing it, because, as liquidating partner under the power of attorney, he possessed no authority to alienate the assets of the partnership.  2d. That no notice of the transfer from *Peyroux, Arcueil & Co.* to *Boyle*, nor of the transfer from *Boyle* to *Smith*, was given before the seizure to the debtors, *Farrar* and wife.

I. Evidence was offered to show that the assignment to *Boyle* enured to the benefit of the old firm.  But this evidence was excepted to, and was rejected by the district judge.  Whether it was properly rejected or not, we deem it unnecessary to consider.  It results from authentic evidence that *Arcueil* and *Barjac*, the only members of the new firm who were partners of the old firm, recognized and affirmed the transfer to *Boyle* before *McMicken's* attempted seizure.  They were thus estopped from questioning the assignment by the liquidating partner of the old firm to *Boyle*, on the score of authority under the power of attorney ; and this estoppel precludes *McMicken*, who, by his seizure of their interests, pretends to hold under them.

---

EUSTIS, C. J., being interested, did not sit on the trial of this case.

II. Upon the question of notice, the record exhibits evidence which leaves upon our minds no moral doubt that notice was duly given. But the competency of the witnesses by whom it was proved, was excepted to. We are not obliged to consider the question of competency, and may disregard that evidence entirely. For there is a question which stands before the question of notice, and overshadows it. If solved in favor of the plaintiff it will become unnecessary to enquire whether notice of the assignment to *Boyle* was duly given. That question is, whether the seizure made by *McMicken* was lawful? Whether upon an execution against certain members of the old firm of *Peyroux, Arcuell & Co.* for a debt not the debt of that firm, *McMicken* could seize the judgment which was an asset of the old firm, or even acquire any legal right by seizing what is termed in the sheriff's return, the interest of the individual partners, who were defendants in the execution? If such seizure was unlawful and conferred no right upon the seizing creditor, it obviously follows, that *McMicken* has no right to discuss the question of notice as affecting the transfer.

For the proper consideration of this question, which propounded in its simplest form is, whether a creditor of a partner can seize a particular asset of the partnership, or even what he chooses to call the interest of his debtor in a particular partnership asset, it is necessary to consider briefly the nature of the contract of partnership, and the consequent character of partnership property and the rights of its members. By such a course of enquiry we will be enabled to ascertain the true purport of the expression, " the share of any partner," which article 2794 of the Code, permits to be seized and sold to satisfy his individual creditors.

Our Code has defined a partnership to be, a synallagmatic and commutative *contract*, made between two or more persons, for *the mutual participation in the profits* which may accrue from property, credit, skill, or industry, furnished in determined proportions by the parties. Art. 2772. This definition, for the purpose of our present enquiry, is substantially the same as that found in the Code Napoléon, and that given by Pothier. It accords with the civil law as presented by Domat, who defines partnership to be a covenant by which two or more persons unite in carrying on some commerce, some work, or some other business, that they may *share among them all the profit or loss* which they may have by the joint stock which they have put into the partnership. He cites the principle of the roman law—Sicuti lucrum, ita damnum quoque conmuno esse oportet. And if we look to the common law writers, we find in the general theory a substantial harmony with our own, with the French, and with the civil law. It is a *contract*, says Chancellor Kent, of two or more persons to place their money, effects, labor, and skill, or some or all of them in lawful commerce or business, and to *divide the profit* and bear the loss in certain proportions. See Code Napoléon, art. 1832. Pothier, Contrat de Societé, p. 1. Domat, book 1, title 8, sec. 1, §1.

Being, in every jurisprudence with which we are acquainted, considered as taking its origin in the *contract* of the parties, and each partner being bound to respect and fulfil the contract, it is obvious that no person claiming to hold under any of the parties, after the formation of the partnership, can derive any legal right or benefit through a violation of that contract. It is also to be ovserved that a *participation of the profits* is of the essence of partnership. But profits are the excess of gain over loss. From these essential characteristics of the contract, as exhibited by the very definition of our Code, and by its other pro-

visions upon this subject, there results a principle which is consecrated by the jurisprudence of centuries, and rests upon authority too high to be questioned. The partnership once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person, which has its peculiar rights and attributes. Une personne fictive et morale séparée des associés. Fictæ cujusdam personæ vicem obtinet. See the authorities cited in Troplong on Part. §68, &c. Hence, therefore, the partners are not the owners of the partnership property. The ideal being thus recognized by a fiction of law, is the owner; it has a right to control and administer the property, to enable it to fulfil its legal duties and obligations; and the respective parties, who associated themselves for the purposes of participating in the profits which may accrue, are not the owners of the property itself, but of the residuum which may be left from the entire partnership property, after the obligations of the partnership are discharged.

This distinction between the partnership as an abstract ideal being and the persons who compose it, is illustrated by rules so familiar that it would be an unnecessary waste of time to argue in their defence. Thus the failure of the partnership does not involve the failure of its members. The creditor of a partner, who is at the same time the debtor of the partnership, would not,when sued by the partnership, be permitted to plead the debt due to him by the former in compensation. So a member of the partnership, sued by his individual creditor, could not plead in compensation a debt due by his creditor to the firm. Ward v. Brandt, 11 Mart. 331. Terran v. De Lastra, 2 La. 326. Pardessus, part. 4, tit. 1, ch. 1, sec. 3. So it has been held in France that the wife's tacit mortgage does not attach upon real estate belonging to the firm. Dalloz, Hypothéque, p. 166.

From these principles we think it fairly results that, the individual creditor of a partner cannot seize a particular asset the property of the partnership, nor even the so called interest of the partner in it, under the pretext that his debtor has an undivided interest in it. He must await the liquidation of the partnership, and, in the mean while, lay hold of the residuary interest of the partner in the partnership generally,by levying a seizure in the hands of the partnership, or the person charged with its liquidation and representing it. Such is the opinion expressed by Troplong, who is sustained by the authority of Pardessus. Le créancier particulier d'un associé ne peut donc faire saisir les effets et autre choses formant l'actif de la société, sous prétexte qu'une partie indivise en appartient à son débiteur. Il doit attendre la liquidation, se borner à former des oppositions susceptibles de conserver ses droits, et exercer ceux de son débiteur, dans le partage des profits. Pardessus, Droit Commercial, part 4, tit. 1, ch. 1, sec. 4.

If a contrary doctrine were recognized, it would not only clash with the contract of the partners when they entered into the partnership, and with the essential rights and attributes of the partnership, but in practice would lead to a confusion which might prove inextricable. If numerous creditors of the partners lay seizures in the hands of various debtors of the partnership, thus entangling perhaps its only assets, how is the partnership to be liquidated? The partnership assets are a trust fund for the partnership creditors, who are to be paid before the respective partners, and, by consequence, their creditors can receive any thing. But the duty of the partnership is frustrated, and may become utterly impracticable, if its control over its own property is wrested from it. Such a state of things would enable the creditor of the partner to do

what the partner could not himself do. It would be in direct conflict with the spirit of that provision of the Code which says that, " every partner may make use of the things *belonging to the partnership*, provided he employs the same to the uses for which they are intended, and he does not use them in such a manner as to prevent his partners from using them according to their rights, or against the interest of the partnership." Art. 2841.

SMITH
*v.*
McMICKEN.

If doubts have existed on this subject in our courts, and the practice has grown up of seizing the assets of the partnership, instead of seizing the residuary interest of the partner in the hands of the partnership, it has arisen from looking to the english authorities as laid down by the courts of common law jurisdiction; authorities which we cannot follow on this subject, without breaking down on our own jurisprudence.

In *Fox* v. *Hanbury*, Lord Mansfield said : " If a creditor takes out execution against one partner, as in Salk. 392, the vendor would be tenant in common." In *Haydon* v. *Haydon*, Salk. 392, Lord Holt said : " The sheriff must seize the whole and sell a moiety thereof undivided, and the vendee will be tenant in common with the other partner." This doctrine rests upon a basis which is certainly false under our system, to wit, that partners are tenants in common. And even in England the courts of common law have, in later times, become alarmed at this doctrine, and doubted its correctness. In *Burton* v. *Green*, the defendant was sued for a false return of *nulla bona*. It was proved that the defendant in execution had a one-third share in a colliery, where there were goods and fixtures belonging jointly to him and his partners to more than three times the amount to be levied under the execution; and it was contended, on the part of the plaintiff, that the sheriff should have levied on this joint property to the extent of one-third. The defence was that, partnership property could not be seized under a writ of *fieri facias* sued out against one partner only; and that, even if it could, a commission of bankrupt had been sued out against the debtor, and the property in the goods had passed to the assignees. Lord Tenterden, among other remarks, said: " I am not quite satisfied as to the interest which the sheriff might have sold under the execution. There is great difficulty in making the sheriff a tenant in common with the partners." 3 Carrington and Payne, 306. See also the opinion of Kent, Chief Justice, in *Wilson & Gibbs* v. *Conine*, 2 John. 281.

We are of opinion that *McMicken* took nothing by his seizure either of the judgment, or the so called interest of *Arcueil* and *Barjac* in it.

*Judgment affirmed.*