(34 South. 740.)

No. 14,681.

STOTHART et al. v. WILLIAM T. HARDIE & CO. et al.*

(March 30, 1903.)

MARRIED WOMAN—SURETY FOR HUSBAND—ADVANCES TO FIRM—VALIDITY.

As Relates to Facts.

1. The former owner, who died after this appeal, transferred her property to the partner of her husband in a commercial partnership; and he, in turn, mortgaged it to obtain an advance for the firm.

2. This former owner swore that the method followed was suggested by the creditor, and in this the record contains some corroboration.

3. The creditor swore that he had made no suggestion. Plaintiff claimed that the mortgage was to secure the debt of her husband.

As Relates to Law.

4. True, the wife cannot be her husband's surety. She can be the surety of a partner to secure advances to the partnership, although her husband is a member of the partnership.

5. "The partnership was a distinct personality from the individuals who compose it." Rivers v. City, 8 South. 484, 42 La. Ann. 1201.

(Syllabus by the Court.)

Appeal from Third Judicial District Court, Parish of Bienville; Wm. Usher Richardson, Judge ad hoc.

Action by Elvia Stothart and husband against William T. Hardie & Co. and others. Judgment for plaintiffs, and defendants appeal. Reversed.

Ben Allen Rennolds, for appellants. Nettles & Teer and John C. Theus, for appellees.

Statement of the Case.

BREAUX, J. This suit was brought by the late Mrs. Elvia Stothart and husband to

---

*Rehearing denied June 25, 1903.

have a sale of land annulled which she received as a donation from her father. Since the appeal, Mrs. Elvia Stothart died. Her surviving husband, as tutor of the children, was made a party.

In assailing defendants' title, they, in substance, set out that the firm of William T. Hardie & Co., composed of William T. Hardie, William F. Hardie, and Robert T. Hardie, are in possession under a transfer to them from the heirs of John T. Hardie and the other members of the late firm of John T. Hardie & Co.; that the transferrors, John T. Hardie & Co., composed of John T. Hardie, William T. Hardie, and Thomas G. Hardie, bought the land in question at sheriff's sale in 1892, which sale was made under execution in suit of John T. Hardie & Co. against W. J. & D. C. Stothart, to pay, plaintiff averred, a debt of her husband to W. J. Stothart and his brother; also a debt of the firm of W. J. & D. C. Stothart to the firm of John T. Hardie & Co.

It appears that at one time the firm of W. J. & D. C. Stothart were heavily in debt, mainly to John T. Hardie & Co. Plaintiff states that, at the suggestion of John T. Hardie & Co., she was induced in March, 1890, to transfer the land she now claims to D. C. Stothart, her brother-in-law, and partner of her husband, for $1,500, to be paid in the January following. She avers that the note representing that amount was made payable to bearer, and was retained by W. J. & D. C. Stothart, who pledged it to John T. Hardie & Co. to secure their indebtedness; and she charged that this transfer was made, as just stated, in order to avoid the law prohibiting a married woman from becoming responsible for her husband's debts; that it never was the intention to pay her.

John T. Hardie & Co. instituted foreclosure proceedings, via ordinaria, and obtained judgment on this note and mortgage. The judgment was executed. The property was sold and bought on March 19, 1892, by the firm of John T. Hardie & Co. for the sum of $300.

Defendants joined issue with plaintiff; pleaded estoppel on the ground that, in a suit brought by plaintiff against her husband, she alleged that at the time of her marriage with her husband, in 1886, and prior, she owned an undivided half interest in

1,200 acres of land appropriated by her husband; that she prayed for a separation of property and a dissolution of the community; that D. C. Stothart, in this suit, testified that he bought 600 acres of land from plaintiff for $1,500, and that the money on the note which he gave for the land was used in the firm of W. J. Stothart; that she obtained judgment for the $1,500 against her husband, and for a dissolution of the community.

Defendants deny that they were heirs of John T. Hardie, as alleged, and William T. Hardie and Robert T. Hardie deny that they were members of the firm of John T. Hardie & Co.

It seems that, after the death of John T. Hardie, in the settlement of the affairs of William T. Hardie & Co., William T. Hardie bought the land which plaintiff describes in her petition.

All of the defendants disclaim knowledge of the reasons why the plaintiff sold to D. C. Stothart the land which she now claims; and William T. Hardie, who attended to the loan made by the firm to Stothart & Co., swears that they never suggested or advised Mrs. Stothart, either directly or through counsel, to sell the property to D. C. Stothart, plaintiff's brother-in-law.

Upon another branch of the case (that relating to the separation of property from her husband), she testified that she had no knowledge of the suit filed in the case in her name against her husband for a separation of property. She further said, in answer to questions propounded, as follows:

"Q. Mrs. Stothart, what authorization did you give for the institution of that suit?

"A. I authorized Mr. Stothart to see to it.

"Q. Mrs. Stothart, what authority did you ever give any one to employ counsel to bring suit against your husband for a separation of property?

"A. I never gave any."

She also testified that she never talked to an attorney about obtaining a separation of property, and had no knowledge of the suit until some time after it had been brought, and that she never authorized her husband to bring suit, and she heard of the separation of property only some time after it had been obtained.

Before the statement of facts was closed, defendant objected to testimony offered, on

the ground that it was not in rebuttal, as the testimony regarding the want of authority of the attorney who represented plaintiff in the proceeding for separation of property.

We must insert here a copy of the judge's ruling upon this subject, as it has bearing upon the issues, as will appear in our opinion: "The plaintiff offered evidence which was an attack on an attorney, and this was ruled out, and defendant offered no evidence as to the authority of the attorney. So, therefore, there was nothing to rebut. Therefore the objection is sustained."

We close our account of the facts with the statement that plaintiff, with the consent of her husband, sold her property to her brother-in-law, who in turn mortgaged it to John T. Hardie & Co. The mortgage was foreclosed, and by conveyance the property passed into the ownership of William T. Hardie.

## Opinion.

The question of estoppel, in the order of the issues, is the first before us for consideration. We have stated in our account of the facts that the contention on the part of defendants is that in a court of competent jurisdiction, in another suit, plaintiff alleged matters which are contradictory to the record in the suit before us for decision.

Plaintiff joins the issue, and argues that there is no estoppel, because the plea of the wife against the husband did not influence in any way, as the suit was filed some time after the loan had been made by Hardie & Co. to Stothart & Co., and after Hardie & Co. foreclosed, and after the land had been bought by defendants' authors at sheriff's sale.

We find no good reason to dwell upon this plea of estoppel. Plaintiff's action is based upon averments of fraud and simulation. From that point of view, the plea is not good, and cannot hold. If plaintiff, by proof, succeeds in sustaining that averment, the plea of estoppel would not stand for an instant in the way of her recovering a judgment.

We will only refer, in passing, to plaintiff's complaint, that she did not authorize the attorney to enter a suit for separation of property against her husband.

The statement of the district judge in excluding further testimony, as before mentioned, shows that the want of authority of the attorney was not insisted upon. If it was, the testimony as a whole would not justify us in holding that an attorney of repute had undertaken to obtain a judgment of separation of property against the will or without the knowledge of the plaintiff, in whose name he brought the suit.

This brings us to the question whether plaintiff bound herself as surety for any other person than her husband. If she did bind herself to a third person, the decisions have long since settled that a married woman may bind herself as surety for any other person than her husband.

We will state preliminarily that it does not appear by the testimony that defendants were co-owners, but they were regularly commercial partners, from whom the firm of which plaintiff's husband was a member obtained advances, as before stated. We scarcely need to state that commercial partners are bound in solido, and that in consequence the obligation of W. J. & D. C. Stothart was in solido.

Plaintiff's property stood as security for the firm; also as security for the debt of her brother-in-law, D. C. Stothart, member of the commercial firm. The fact that her husband, W. J. Stothart, was also a partner in interest, does not render it less evident that her obligation was as security of D. C. Stothart, a third person, who was bound for the whole of the debt. There was nothing joint in the indebtedness of these partners to Hardie & Co. It was a distinct obligation of each for the whole. While the property went for the security of the two debtors, it was equally security for the whole debt of one of these partners.

If there should be any doubt in regard to this view (we do not think there should be), we are then led to consider the relation plaintiff bore to the firm itself, of which her husband was a member. Was it as a third person? We think it was.

Partnership is defined as being a contract creating a distinct person from those who compose it. "A moral being"; "a civil person." Partners, under our law, are not tenants in common. Succession of Pilcher, 39 La. Ann. 363, 1 South. 929.

"Partners, under our law, are not tenants in common, as understood by the English law." Smith v. McMicken, 3 La. Ann. 319.

## SUCCESSION OF GRAGARD.

The court said in Rivers v. City, 42 La. Ann. 1201, 8 South. 484:

"The partnership was a distinct personality from the individuals who compose it."

Quite recently, this court said:

"The firm was a legal entity, separate and distinct from its members; and the two firms, though one had grown out of the other, and had in its composition two members, or ex-members, of the other, were entirely distinct and separate legal entities or persons." Newman v. Eldridge, 107 La. 315, 31 South. 688.

A number of decisions are cited in support of this text. If there are decisions to the contrary, we have been unable to find them.

This being the definition of one of the elements of partnership, we would be at a loss to hold that a partnership, under the circumstances here, is not a third person, in law, not affected by the fact that one of the partners falls, as relates to the property of his wife, within the prohibition of the law against her becoming his surety.

In considering this subject, for the purpose of illustration, it occurs to us that there are corporations organized under the general laws prior to 1888, by which shares are issued. Let us suppose that a husband were holder of shares in such a corporation; we do not think that this interest would disqualify the wife from becoming surety of the corporation, or, if the corporation be one burdened with the word "limited," under the statute of 1888, the corporation would be a third person, as relates to the wife, although the husband is one of its members.

We come to partnerships, and find that they, upon this point, are considered in the same light as corporations. We would not, therefore, consistently hold that the wife is not a third person as to corporations, but not as to partnerships.

This being our view, we think that it disposes of all the points involved, for we have not found in the facts shown that condition of fraud and simulation which plaintiffs insist has been committed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court in this case is avoided, annulled, and reversed; that the demand of plaintiffs be rejected; and that they pay costs of both courts.