## ESTEVE BROS. & CO. v. HARRELL.

(Circuit Court of Appeals, Fifth Circuit. April 6, 1921.)

No. 3638.

1. **Partnership 204—Process against firm recognized as entity need not be served on partners.**

    Since a commercial partnership organized under Rev. Civ. Code La. art. 2825, is a legal entity, distinct from the partners composing it, process may be served on it by delivering the process at its place of business within the state to an agent in charge thereof, who was not a partner, as permitted by Code Prac. La. art. 198, and though all the partners were nonresidents of the state.

2. **Evidence 271(18)—Message by plaintiff, stating promise by defendant, inadmissible to show promise.**

    In an action by an insurance broker for commission on a covering contract for war risk insurance, where it was the custom for a broker's commission to be paid by the insurer, but he sought to show a special agreement by the defendant exporters to pay his commission, it was error to admit in evidence a message sent by the broker to the insurance company, in which he stated that the exporters had agreed to pay his commission, and the evidence was prejudicial, where the exporters denied making such agreement.

3. **Evidence 139—Proof that another exporter paid insurance broker's commission inadmissible to show promise by defendant exporters.**

    In an action by insurance brokers against exporters for commission on war risk insurance, where the evidence showed the custom was for such commission to be paid by the insurers, but plaintiff claimed a special promise by the exporters, it was error to admit in evidence testimony by another exporter that, under the same circumstances, he had paid the commission to the insurance broker.

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action in a Louisiana state court by John R. Harrell against Esteve Bros. & Co., removed to the United States District Court. Judgment for plaintiff, and defendants bring error. Reversed.

J. Blanc Monroe and Monte M. Lemann, both of New Orleans, La., for plaintiffs in error.

Wm. Winans Wall and Johnston Armstrong, both of New Orleans, La., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This action was brought in a Louisiana state court by John R. Harrell, the defendant in error (herein referred to as the plaintiff), against Esteve Bros. & Co., described as "a firm composed of Ramon Esteve, Jose Esteve, Javier Esteve, Louis Esteve, and Angel Esteve, * * * engaged in the business of buying cotton and selling same for export," and domiciled in the city of New Orleans. A deputy sheriff's return shows that, on a date stated, he—

"served a copy of the within citation and accompanying petition on Esteve Bros. & Co., a firm composed of Ramon Esteve, Jose M. Esteve, Javier Esteve, Louis Esteve, and Angel Esteve, defendants herein, by leaving the same at their office, 819 Gravier street, in the hands of C. A. Hatry, manager and cash-

ier, a person apparently over the age of 18 years, whose name and other facts connected with this service I learned by interrogating the said C. H. Hatry, manager and cashier; the said members of said firm, defendants herein, being absent from the state at the time of the service."

On the application of the individuals composing the defendant firm, alleged to be aliens and nonresidents of Louisiana, who appeared in the state court specially and solely for the purpose of obtaining a removal, there was a removal of the cause to the court below. In that court the same individuals, appearing specially and solely for the purpose of the motion, moved the court to quash the service of process. After that motion was overruled, the same individuals, protesting against the overruling of the motion, appeared under protest and answered the declaration.

In behalf of the plaintiff in error it is contended that no jurisdiction was acquired by the service which was brought into question by the motion to quash. The opposing contention is that that service was made effective to confer jurisdiction by the Louisiana statute which provides that—

"In suits against any commercial association trading under a title or as a firm," process shall be served "on any of the partners in person, or at their store or counting house, by delivery to their clerk or agent." Code of Practice of Louisiana, art. 198.

[1] The firm of Esteve Bros. & Co., being a partnership formed for the purchase and sale of cotton, is what is known to the Louisiana law as a commercial partnership. Revised Civil Code of Louisiana, art. 2825. Under the Louisiana law a partnership is a fictitious being, distinct from the partners composing it. Succession of Pilcher, 39 La. Ann. 362, 1 South. 929. The above set out provision as to service of process is a recognition that such a partnership as the one in question is subject to be sued. A principal difference between that statute and the Texas statute which was before the court in the case of Sugg v. Thornton, 132 U. S. 524, 10 Sup. Ct. 163, 33 L. Ed. 447, is that the former permits process in a suit against a commercial partnership to be served either on any of the partners in person, or at their store or counting house by delivery to their clerk or agent, while the latter permits judgment against a partnership when process has been served on one of the partners. In the opinion in that case it was distinctly recognized that, so far as firm assets were concerned, the judgment against the partnership was binding on J. D. Sugg, a nonresident partner who was not served. The following is an extract from that opinion:

"The judgment was not a personal judgment against J. D. Sugg, but a judgment against E. C. Sugg individually, and against E. C. Sugg & Bro., treating the partnership as a distinct legal entity. So far as J. D. Sugg was concerned, it bound the firm assets only, and could not be proceeded on by execution against his individual property."

We are not of opinion that the validity of service of process against a partnership which has the status of a distinct legal entity is dependent upon it being made on one or more of the partners. The artificial being recognized by law may, by agents or representatives other than

its component members, be present and subject to be dealt with at a place where no member of the firm is.

In many respects a trading partnership is like a business corporation. Each is an association of its members for pecuniary gain. A principal difference between them is that changes in the membership of the latter do not affect its identity nor break the continuity of its existence. In the one case as well as the other the law may recognize the existence of the association as an artificial being, separate and distinct from its members, capable of having rights and of being subject to duties or obligations, enforceable in favor of or against it in suits or proceedings to which its members are not parties. It is competent to provide for serving process against a private corporation by delivery to its agent at a place where it does business. We are aware of no legal obstacle standing in the way of service of process against a partnership, which is recognized as a separate legal entity, being authorized to be made in the same way. One not a member of a trading partnership, who is put and left in charge of its place of business, as well may be, so far as firm assets are concerned, a representative of nonresident partners as a resident partner could be.

Under the above set out statute, service in a suit against a commercial partnership, if made by delivery to a clerk or agent, must be "at their store or counting house." The service in question was made in pursuance of the statute. The question of the validity of service of process against a partnership in a suit brought in a state in which it is not visibly present and doing business is not presented. We think the service made was effective to give the court jurisdiction to render judgment against the partnership, and that the overruling of the motion to quash was not error.

This was an action to recover compensation for services rendered by the plaintiff as an insurance broker in arranging for war risk insurance on cotton to be exported to Europe by the defendant. The larger of the two items claimed was based on so-called coverings for such insurance on cotton to be shipped from Galveston to Barcelona, Spain, on the ship Mar Rojo. Those engagements or coverings were made in October, 1918, at the rate of 3½ per cent.; one covering calling for November sailing, and the other for sailing prior to November 16th. Such arrangements do not bind either the insurer or the insured, if the sailing of the named vessel does not occur within the time specified. The Mar Rojo did not sail until December 3, 1918. Immediately after the signing of the Armistice on November 11, 1918, war risk insurance rates dropped to about one-eighth of 1 per cent. On November 30, 1918, after it had become apparent that the Mar Rojo would not sail in November, defendant notified the plaintiff that the war risk insurance previously arranged for was nullified, and requested plaintiff to procure the same amount of such insurance on the cotton at the then current rate.

Upon plaintiff failing to do so, the defendant obtained the desired insurance from other brokers. If the insurance arranged for in October had become effective, and been paid for as contemplated, the defendant would have been under no obligation to pay the plaintiff any-

thing for his services. In that event, in pursuance of the custom governing such transactions, the insurer alone would have been liable to the plaintiff for his commission. It was usual for the broker to retain his commission out of the premium collected by him. The petition alleged that the defendant promised to pay the plaintiff the amount of the commissions the latter would have received from the insurer if the arrangements made in October had been carried out. That allegation was put in issue.

[2] The evidence on that issue was conflicting. The plaintiff's testimony tended to prove that defendant's representative made such a promise shortly after the signing of the Armistice, when the plaintiff was requested to get a reduction in the rate of premium previously agreed to. The evidence for the defendant tended to prove that the transactions in question were conducted in the usual way, and that the defendant did not promise to pay any commission. Over the defendant's objection the court admitted in evidence the following cable message, dated November 25, 1918, sent by the plaintiff to his correspondent in London, through whom arrangements for part of the insurance had been made:

"Ernest London: Eighteen your seventyseven Marojo still unreported impossible sail November thereby releasing except current rates brokerage promised.                                                  John Harrell."

That ruling is sought to be supported on the ground that the sending of that message tended to prove the making of an effort by the plaintiff to get the insurer to agree to a reduction of the rate of insurance fixed in October. The evidence had no such tendency. The language of the message shows that at the time it was sent it was known that the sailing of the Mar Rojo in November had become impossible. That fact put it out of the power of the plaintiff or his principal to hold the defendant to the rate made before the Armistice. The cable was not admissible as evidence of the making by the defendant of the promise alleged by the plaintiff. It was not competent to prove that fact by the defendant's statement to a third person that such promise had been made. The court erred in overruling the objection. It may be supposed that the evidence of the plaintiff's self-serving statement to the effect that brokerage was promised was not without influence in leading the jury to find that the defendant made the alleged promise.

[3] Over the defendant's objection the court admitted in evidence the testimony of a witness, who was a cotton exporter, to the effect that he paid the plaintiff a commission on insurance contracted for on cotton to be exported, though the policy was never issued. That testimony had no tendency to prove the existence of a custom for the prospective insured to pay a commission on insurance arranged for by a broker, but which never attached. The custom being for the insurer to pay the broker's commission by allowing the amount of it to be retained out of the premium paid, the defendant was not bound to pay a commission on insurance arranged for by a broker, but which never attached, unless it made a valid promise to do so. The fact that another exporter compensated the broker in such a case had no tendency to prove that the defendant, by promise or otherwise, was un-

272 F.—25

der a duty to pay the compensation claimed. The record contains nothing requiring the conclusion that the improperly admitted evidence as to a transaction between the plaintiff and a third person was without influence in leading the jury to find in favor of the plaintiff.

Other questions raised are such as may not arise in another trial. Because of the above-mentioned errors, the judgment is reversed.

KING, Circuit Judge (concurring). In this case the writ of error is sued out alone by the partnership, and the error assigned is the service on it, by service on its agent. Under the law of Louisiana, in which the principal office of this partnership was located, and where the contracts here sued were made—

"the partnership once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person, which has its peculiar rights and attributes. * * * Hence, therefore, the partners are not the owners of the partnership property. The ideal being, thus recognized by a fiction of law, is the owner. * * * This distinction, between the partnership as an abstract ideal being and the persons who compose it, is illustrated by rules so familiar that it would be an unnecessary waste of time to argue in their defense." Smith v. McMicken, 3 La. Ann. 319, 322.

This case has been frequently followed. Pittman & Barrow v. Robicheau, 14 La. Ann. 108; Succession of Pilcher, 39 La. Ann. 362, 1 South. 929. The law of Louisiana therefore recognizes the doctrine of the separate entity of a partnership in the fullest manner. 20 R. C. L. p. 804.

As the law of Louisiana regards a commercial partnership as a legal entity separate from the partners, it would seem that the law could provide for service of suits against such legal entity by service of process at its place of business on an agent of the abstract legal entity, the judgment based on such service to bind only the legal entity and operate as a lien on its property. Pennoyer v. Neff, 95 U. S. 714, 735, 24 L. Ed. 565