## DONOHOE OIL & GAS CO. v. MACK-JOURDEN CO. et al.

### No. 4347.

Court of Appeal of Louisiana. Second Circuit.

Nov. 10, 1932.

For former opinion, see 142 So. 713.

Thatcher, Browne, Porteous & Myers, of Shreveport, for appellant.

H. W. Bethard, Jr., of Coushatta, for appellees.

DREW, J.

Plaintiff sued defendant, alleging it to be an ordinary partnership, composed of Walter Mack, a resident of the state of Texas, and W. L. Jourden, a resident of the state of California, and numerous other persons alleged to be partners in commendam, and that they are indebted unto petitioner in the sum of $650, the balance of the purchase price of a standard rig sold to defendant on October 9, 1931.

It alleged the rig was installed by defendant and used to equip Mack-Jourden Well No. 1, on the Lockett property, in township 13 north, range 10 west, in Red River parish, La.

It further alleged that the copartners are all nonresidents of the state of Louisiana, and there is no representative within the state or the jurisdiction of this court upon whom service of process may be made; that said partnership and nonresident copartners own property within the state of Louisiana and within the jurisdiction of this court; and that petitioner is entitled to the issuance of writs of attachment against the property of said "copartnership, and said copartners, defendants, absentees." That under its vendor's lien and privilege on the said standard rig sold to defendant, it is entitled to have the rig seized and sequestered, and also its lien as furnisher of materials recognized and enforced, in preference to any other person's claim whatsoever.

It further avers that an attorney at law should be appointed curator ad hoc to represent the "defendants, absentees," and prays for the appointment of a curator ad hoc and for service and citation, as the law directs, and for judgment against the said partnership, and against the copartners, Mack and Jourden, as ordinary partners, and against the remainder of the named copartners, as partners in commendam, together with the recognition of petitioner's vendor's lien and privilege, and also for recognition of its lien and privilege upon said standard rig, equipment, and appurtenances, as a furnisher of materials. It further prays that the writs of attachment and sequestration be maintained and enforced, with recognition of its lien and privilege resulting therefrom.

Attached to the petition is the following affidavit and order:

"State of Louisiana, Parish of Caddo.

"Before me, the undersigned authority, a duly qualified Notary Public in and for the Parish and State above written, came and appeared S. E. Davies, who declared that he an employee of the Donohoe Oil & Gas Company, plaintiff in the foregoing suit; that the amount sued for is justly and truly owing and due by the defendants to the said Donohoe Oil & Gas Company, as the balance of the purchase price of that certain Standard Rig and equipment sought to be sequestered herein; and that it lies within the power of the defendants to conceal, part with and dispose of said movable properties, which are in their possession, and he verily fears that the said defendants will so conceal, part with or dispose of said properties during the pendency of this suit.

"Affiant further declared that he verily believes that the debtors have left the State permanently, or are on the eve of leaving the State permanently, or that they reside out of the State, or conceal themselves so that citation cannot be served upon them, or that they have mortgaged, assigned, or disposed of, or are about to mortgage, assign or dispose of the property, rights or credits with intent to defraud their creditors, or give an unfair preference to some of them, or that they have converted or are about to convert the property into money, or evidences of debt, with intent to place same beyond the reach of their creditors, and that said copartners are nonresidents of the State of Louisiana.

"S. E. Davies.

"Sworn to and subscribed before me, on this the 18th day of December, 1931.

"Percy N. Browne, Notary Public.

"State of Louisiana, Parish of Caddo.

"Before me, the undersigned authority, personally came and appeared Sidney G. Myers, who, being duly sworn, deposed and said that he is one of the attorneys for the petitioner in the above and foregoing petition, and that all of the allegations therein contained are true and correct to the best of his knowledge, information and belief.

"Sidney G. Myers.

"Sworn to and subscribed before me, on this the 18th day of December, 1931.

"Percy N. Browne, Notary Public.

"Order.

"The foregoing petition and affidavits considered, and it appearing that all of the defendants herein are nonresidents of the State of Louisiana, let W. H. Walmsley, an attorney at law, be and he is hereby appointed Curator ad Hoc, to represent the defendants herein,

absentees; let writs of attachment and sequestration issue herein as prayed for, on petitioner's giving bond, with good and solvent security, according to law, in the sums of $250.00, for said writ of attachment, and $250.00, for said writ of sequestration.

"This 28th day of December, 1931.

"James W. Jones, Jr., Judge."

Bonds in the sum of $250 each were executed, in accordance with the order of court. All persons made defendants herein appeared by counsel solely for the purpose of the motion to dissolve and alleged that the writ of attachment should be dissolved for the following reasons:

"(a) That the Mack-Jourden Company is not a non-resident company, but is a partnership formed under the laws of the state of Louisiana, with its domicile at Coushatta, Red River Parish, Louisiana.

"(b) That no action lies; and accordingly no writ of attachment should issue against the individual partners thereof, even though they may be non-residents of the State of Louisiana, until the sum claimed is first legally adjudged to be due and owing by the partnership, Mack-Jourden Company; and that an action could not, under any circumstances, lie against the partners in commendam unless it was an action for the unpaid portion of said partners' subscriptions to said company.

"(c) That the affidavit made to secure the issuance of said writ of attachment was made and executed by persons unauthorized by law to make the same.

"(d) That the statements of fact made and contained in the affidavit to secure the issuance of said writ are false and unfounded in fact."

And prayed for damages for the unlawful and wrongful issuance thereof, for the following causes:

"(a) That the rotary rig and other property of defendant company under attachment herein was moved, after its attachment, from its location at the oil well of petitioner in the Parish of Red River, Louisiana, without the authority and consent of your mover, Mack-Jourden Company, and that it will cost said company, your mover, the sum of Five Hundred Dollars to replace said property in its former location, and by reason thereof your mover has been damaged in said sum and should have judgment therefor.

"(b) That your mover has been forced to employ an attorney at law to represent it in this motion at a cost of $100.00, and should have judgment as attorney's fees for that amount."

On the same date, defendant filed a motion to dissolve the writ of sequestration, alleging same to have unlawfully and wrongfully issued for the following reasons:

"(a) Because the affidavit made to secure the issuance of said writ of sequestration was made and executed by persons unauthorized by law to make the same.

"(b) Because the statements of fact made and contained in the affidavit to secure the issuance of said writ of sequestration are false and unfounded in fact."

And set up damages for the wrongful issuance thereof, as follows:

"(a) That the standard 'rig' and other property of defendant company, sequestered under said writ in this cause, was moved, after sequestration, from its location at the oil well of petitioner in the Parish of Red River, Louisiana, without the authority and consent of your defendant company, and that it will cost said company, your mover, the sum of Two Hundred Fifty Dollars to replace the same as it was at the time of seizure herein, and by reason thereof defendant company has been damaged in said sum and should have judgment therefor.

"(b) That your mover has been forced to employ an attorney at law to represent it in this motion at a cost of $100.00, and should have judgment as attorney's fees for that amount."

They also on the same date filed an exception of no cause of action. The evidence was taken on the motions to dissolve the writs of attachment and sequestration, and the lower court rendered the following judgment:

"Ordered, adjudged and decreed: That there be judgment herein in favor of the Mack-Jourden Company, plaintiff in motions, defendant in main suit, and against the Donohoe Oil & Gas Company, defendant in motions and plaintiff in main suit, dissolving and voiding the writs of attachment and sequestration sued out herein at the instance of said Donohoe Oil & Gas Company, and decreeing that the property seized under said writs of sequestration and attachment be released by the Sheriff of the Parish of Red River, Louisiana.

"It is further ordered, adjudged and decreed: That the said Donohoe Oil & Gas Company pay all costs of the issuance of said writs, the costs of the custody of said property while under seizure, and generally all costs arising from and becoming due because of said writs of attachment and sequestration.

"It is further ordered, adjudged and decreed: That the said Mack-Jourden Company have and recover judgment against the said Donohoe Oil & Gas Company in the full and true sum of One Hundred Dollars, with legal interest from the date of this judgment, as attorney's fees, as damages, for the wrongful issuance of said writs of attachment and sequestration."

From this judgment plaintiff appealed to this court.

It is to be noted that the judgment of the lower court passes only on the case as to the partnership, Mack-Jourden Company, and does not at any time refer to the other defendants, the ordinary partners and the partners in commendam. There has been no answer to the appeal, and this court has before it for consideration only the case of plaintiff as against the partnership, Mack-Jourden Company.

Mack-Jourden Company is an ordinary partnership. Subdivisions 4, 12, and 15 of section 1 of Act No. 179 of 1918, provide for the manner of making service of process on a partnership. Subdivision 12 of section 1 of the act reads, in part, as follows:

"* * * And for the purpose of service upon * * * ordinary partnerships, they shall be considered as having their domicile where the partnership carries on its business, notwithstanding all or some of the partners may reside elsewhere. * * *"

The agreement and article by which the partnership was formed read, in part, as follows:

"1. That in accordance with the laws of the state of Louisiana, they do, by these presents, form themselves into a partnership, formally designated and to be known as the Mack-Jourden Company; which said partnership is hereinafter referred to herein as the company.

"2. That said company is the owner of an oil, gas and mineral lease, acquired by it by assignment this day made by said Walter Mack and W. L. Jourden, covering, embracing and affecting the following described property in the Parish of Red River, state of Louisiana, to-wit:

"That part of Lots 2, 3, 4, and 5 and the E½ and the E½ of W½ of Lot 6; the E½ of the NW¼ and Lots 9, 10 and 11, all in Section 29, Twp. 13 N. R. 10 West, together with all batture and accretions thereto belonging or that may hereafter be added thereto, particularly described as follows, to-wit:

"Beginning at the location, where the derrick now stands, of the Mack-Jourden well on the aforesaid property, run thence north ten chains for a point of beginning; thence east ten chains; thence south twenty chains; thence west twenty chains; thence north twenty chains; thence east ten chains to the point of beginning, and containing forty acres.

"3. That this company is formed for the purpose of exploiting and developing said forty acres for oil, gas and other minerals, and, accordingly, the company shall have the right, power and authority to do and perform all things necessary to accomplish said purpose."

Article 8 reads, in part, as follows:

"8. The said partners in commendam, if and when admitted to the company, shall sign and execute with the company an agreement in practically the following form, to-wit:

"Mack-Jourden Company Agreement.

"Know all men by these presents: that ———, a resident of ——— has this day advanced to and paid unto the Mack-Jourden Company of Coushatta, Red River Parish, Louisiana, the sum of ——— Dollars * * *."

At the bottom of this agreement, we find the following:

"N. B. This agreement must be filed for record in the office of recorder of mortgages, Coushatta, Louisiana, within six days from its date."

The articles of partnership are headed:

"United States of America,
"State of Louisiana,
"Parish of Red River,"

—and were filed for record in the clerk's office of Red River parish, La., and recorded in Book Y, vol. 103, of the Mortgage Records on May 19, 1931, as is required by the Revised Civil Code, arts. 2845 and 2846.

The Mack-Jourden Company is clearly a Louisiana partnership, organized for the sole purpose of developing a 40-acre lease in Red River parish, La. Therefore, Red River parish, La., was not only its principal place of business, but its only place of business. A partnership once formed and put into action becomes, in contemplation of law, a moral being distinct from the persons who compose it—a civil person with peculiar rights and attributes. Suc. of Pilcher, 39 La. Ann. 362, 1 So. 929; Raymond v. Palmer, 41 La. Ann. 425, 6 So. 692, 17 Am. St. Rep. 398; Sherwood v. His Creditors, 42 La. Ann. 103, 7 So. 79.

Subdivision 2 of article 165 of the Code of Practice reads as follows:

"*Partnership.* In matters relative to partnership, as long as the partnership continues, in all suits concerning it the parties must be cited to appear before the tribunal of the place where it is established, or if there are several establishments, before that of the place where the obligation was entered into."

In E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 84 So. 898, 899, the court said:

"Under the civil law, which prevails in this state, a partnership is a legal entity entirely separate and distinct from the persons who compose it, and may have its own creditors and debtors to the same extent as the individual partners." Citing, Newman v. Eldridge, 107 La. 315, 31 So. 688; Stothart v. William T. Hardie & Co., 110 La. 696,

700, 34 So. 740; Smith v. McMicken, 3 La. Ann. 319, 322.

It is not alleged or contended that the partnership, Mack-Jourden Company, is no longer in existence. To the contrary, it is alleged that the partnership is still in existence. The partnership was created on May 9, 1931, and article 4 of the articles of partnership recites that the partnership shall exist for a period of ninety-nine years, unless it is dissolved or liquidated prior to that time.

It therefore follows that the domicile of the Mack-Jourden Company, an ordinary partnership, was Coushatta, Red River parish, La., even though the members constituting the partnership were all nonresidents of the state of Louisiana. This being true, the method of having process served upon the partnership is provided by subdivisions 4, 12, and 15 of section 1 of Act No. 179 of 1918, which method was not followed in this case by plaintiff. Service was made upon a curator ad hoc, appointed to represent defendants, without first following Act No. 179 of 1918, but defendant has failed to take advantage of plaintiff's error and has come into court and moved to dissolve the writs of attachment and sequestration, denying they were nonresidents. At the same time, defendant instituted a reconventional demand for damages for attorney's fees and damages occasioned by removing the rig after it was seized.

This case is identical with the case of Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869. The court stated that case as follows:

"This is a suit against a partnership and its individual members, originally alleged to have been five brothers. It was commenced by attachment and garnishment, on the ground of defendants' nonresidence.

"Defendants were never personally cited. A curator ad hoc was appointed to represent them. The garnishee answered that nothing was due defendants. The matter rested there, until defendants appeared in court by their attorneys and moved to dissolve the attachment, denying they were nonresidents, and alleging that the attachment bond was defective; at the same time defendants instituted a reconventional demand for damages for loss of time, attorney's fees, and injury to their reputation and credit.

"When these pleadings were filed, plaintiff moved for and obtained a default on his main demand, claiming that defendants had appeared in the case and subjected themselves to the jurisdiction of the court, without the necessity of formal citations. Defendants then moved to set aside the default. This motion was overruled. With full reservation of their rights, defendants then filed an exception of no right or cause of action. This exception was also overruled. Defendants thereupon answered, denying in toto the allegations of plaintiff's petition."

The lower court maintained the attachment as to the partnership and dissolved it as to the individual members thereof. On the merits, judgment was rendered against the partnership and the members thereof, for the amount sued for. The case was appealed to the Supreme Court of this state, who said:

"Defendants contend that it was error on the part of the court below to force them to trial on the merits, since they were not in court, and had not become subjected to its jurisdiction by motion to dissolve the attachment.

"There is authority for the proposition that the appearance of a nonresident simply for the purpose of setting aside an attachment is not an appearance subjecting him to the jurisdiction of the court on the merits. Bonner v. Brown, 10 La. Ann. 334; Meritz v. Marks, 26 La. Ann. 740. However, that is not the point at issue. The question to be determined is not whether the motion to dissolve may be construed as a submission to the jurisdiction of the court, but whether the institution by defendants of their reconventional demand, invoking the jurisdiction of the court for the purpose of asserting a large claim for damages against plaintiff must be considered as bringing them into court for all the purposes of the case.

"By article 374 of the Code of Practice, a reconventional demand is defined to be a demand which the defendant institutes in consequence of that which the plaintiff has brought against him, and it is termed a demand in reconvention. Code Prac. art. 375, provides that the demand in reconvention must necessarily be connected with, or grow out of the main demand.

"Prior to the year 1886, a defendant seeking damages for the wrongful issuance of a conservatory writ was relegated to an action on the bond. Since the passage of Act No. 50 of that year, the defendant in all cases of arrest, attachment, etc., may in the same suit, by reconventional demand, recover from plaintiff the damages he may have sustained by the illegal resort to such writ.

"One who desires relief by means of a reconventional demand must institute such a demand in court. His position, in reconvening, becomes that of plaintiff. So much is this the case that, although the demand be inserted in the answer, it is not considered as a part of the answer, but as a petition setting forth a distinct cause of action. Powell v. Graves, 14 La. Ann. 860, 873. It is therefore subject to all the rules of pleading applicable to plaintiff, and must

be set forth with the same clearness and precision as if alleged in a direct action. Frank v. Hollander, 35 La. Ann. 582; Bayly & Pond v. Stacey & Poland, 30 La. Ann. 1210; Teal v. Lyons, 30 La. Ann. 1140; Lallande v. Ball, 21 La. Ann. 185; McMasters v. Palmer, 4 La. Ann. 381.

"And, unlike an intervention, after institution it may exist without the support of a principal demand; so that, even if plaintiff discontinues the suit, the reconvener has the right to prosecute his claim in reconvention, notwithstanding the discontinuance. Barrow v. Robichaux, 15 La. Ann. 70; Davis v. Young, 35 La. Ann. 739, and authorities therein cited. And under the Pleading and Practice Act (Act 300 of 1914, now Act 228 of 1924, par. 2, subsec. 4 of section 1) plaintiff is not permitted to obtain judgment on the face of the papers to the prejudice of a reconventional demand.

"In setting up their claim for damages, defendants have availed themselves of the provisions of Act 50 of 1886, referred to supra. The act permits the demand for damages to be made by way of reconvention in the same suit. And a suit is defined to be 'a real, personal or mixed demand, made before a competent judge, by which the parties pray to obtain their right, and a decision of their disputes. In that acceptation the words suit, process and cause are almost synonymous.' Code Prac. art. 96.

"It is clear, therefore, that the institution of a reconventional demand implies the existence of a prior suit or main demand in court. But, while the method of trial must be governed by the conditions of the main action, the reconventional demand enjoys the status of an independent suit, in which the burden of proof is upon the reconvener to establish the facts alleged. Hence, when the defendants filed their demand in reconvention, they came into the First judicial district court in the character of plaintiffs, seeking to 'obtain their right' and 'a decision' of their dispute on the matters and things alleged in their reconventional demand, and subjecting themselves to the jurisdiction of said court.

"In the case of Blanks v. Lephiew, 132 La. 545, 61 So. 615, this court held that a defendant who excepted to the jurisdiction of the court on the ground of nonresidence, and where no property of his had been attached, waived said exception by appearing generally without reservation thereof, and instituted by way of reconvention a suit in damages."

Therefore, defendants have subjected themselves to the jurisdiction of the court.

The next questions are:

Are plaintiff's allegations for attachment and sequestration sufficient under the law? And have the allegations of the petition and affidavit been disproved?

■ The principal allegation for the writ of attachment is "that the copartners comprising said Mack-Jourden Company are all non-residents of the state of Louisiana, or the jurisdiction of this Honorable Court upon whom service of process may be made."

Articles VIII and IX of the petition, which read as follows:

"VIII. Shows that an attorney at law qualified to practice before this Honorable Court, should be appointed curator ad hoc to represent the defendants, absentees.

"IX. That writs of attachment should issue herein, upon petitioner giving bond as the law directs, directing the Sheriff of Red River Parish to seize and attach the property, rights and credits of said copartnership, and said copartners, defendants, absentees"

—are the only allegations that might be taken for allegations of the partnership being an absentee. But, if we assume that the allegations are sufficient under our finding that the partnership was not an absentee, defendant has disproved the allegation necessary to sustain the writ of attachment.

The affidavit contains other statutory grounds for attachment, which the plaintiff failed to establish by proof. The record discloses these allegations were disproved. Therefore, that part of the judgment of the lower court wherein it dissolved the writ of attachment sued out herein is correct.

The allegations of the petition for a writ of sequestration are contained in article VI, and are as follows:

"That petitioner has a vendor's lien and privilege under the laws of the State of Louisiana, covering and applying to the said standard rig, together with equipment and appurtenances thereto belonging, sold to said copartners, and is entitled to have said standard rig, equipment and appurtenances, seized and sequestered in order to protect its rights in the premises."

■ The affidavit is that it lies within the power of defendants to conceal, part with, and dispose of said movable property, the rig and appurtenances, which are in their possession, and it fears that the defendants will so conceal, part with, or dispose of said property during the pendency of this suit. The allegations and affidavit are sufficient, under the law, for the issuance of a writ of sequestration. Act No. 190 of 1912; Gueydan v. T. P. Ranch Co., 156 La. 397, 100 So. 541.

The mere fact that it was within the power of defendants to conceal, part with, or dispose of this property upon which plaintiff claims a vendor's lien is sufficient. It

is ordinarily in the power of any one to part with, conceal, or dispose of property owned by him and in his possession, and that is all that is required by Act No. 190 of 1912. Therefore, the writ of sequestration was properly and legally issued, unless the affidavit supporting the issuance thereof was executed by a person unauthorized by law to make the same.

On the face of the affidavit, it shows that it is made by "S. E. Davies," who declared that he is an employee of the Donohoe Oil & Gas Company, plaintiff herein. It does not show in what capacity he is employed, whether as a day laborer or office man. There is no allegation as to the absence of the officers of the plaintiff company, viz., president, vice president, and general manager.

On the trial of the motion, it was admitted by counsel for defendants that J. W. Clark, secretary-treasurer and manager-director of plaintiff company, if present, would testify that S. E. Davies, who signed the affidavit in connection with the writ of sequestration, was an agent and employee of the plaintiff company and was fully authorized and empowered to act for the said company in executing said affidavit, and was instructed and authorized by J. W. Clark to have suits filed against defendant and to prepare the necessary and incidental affidavits in connection therewith, reserving the right to object to the testimony on the ground of inadmissibility.

Plaintiff offered in evidence the affidavit executed by S. E. Davies, without objection from defendant. Davies testified that he was assistant secretary and treasurer of plaintiff company, and not a director. The affidavit supporting the writ of sequestration was executed on December 18, 1931. The petition was prepared and verified by the attorney for plaintiff on the same date, but the order for the writs was not signed by the lower judge until December 28, 1931, and the suit was actually filed on January 2, 1932.

Mr. Davies testified, and it is the only testimony in the record on that point, as follows:

"Q. Had any of this payment been made up to the time the suit was filed? A. No, sir.

"Q. Where was Mr. Clark at that time? A. He was spending the time in East Texas.

"Q. Where was he on the date that it was instituted? A. In East Texas.

"Q. Was there any officer of the Donohoe Oil & Gas Company in the state of Louisiana? A. There was not."

The above-quoted testimony is clear that on the date the suit was actually instituted, by being filed with the clerk of court, there was no officer of the plaintiff company in the state of Louisiana, but the affidavit supporting the writ was executed, not on the day the suit was actually filed, but fifteen days prior thereto, and there is no testimony in the record to support the contention that the officers of the plaintiff company were absent from the parish on that date.

A sequestration can only issue when the party is clearly entitled to it and it is expressly allowed. It is a harsh remedy and not to be extended by implication to cases not contemplated by law.

In Bass v. Baskowitz, 170 La. 779, 129 So. 201, the court said:

"We think the attachment was properly dissolved. Act No. 27 of 1926, the pleading and practice act, is identical with Act No. 300 of 1914. See Ducre v. Bagur, 165 La. 307, 115 So. 572. And in Porteau v. Gluck, 149 La. 651, 89 So. 886, this court held that the provisions of the pleading and practice act, to the effect that pleadings might be verified by the affidavit of the attorney 'in all cases,' did not repeal the rigid requirements of the Code of Practice relative to the issuance of conservatory and supervisory writs. And that all such writs should still issue only on the oath of the petitioner himself, unless he were absent, notwithstanding the provisions of the pleading and practice act."

It is therefore certain, we think, that the affidavit for a writ of sequestration must be executed by the petitioner—in this case, its officers, viz. president, vice president, or manager—unless petitioner or its officers are absent. It therefore follows that it is incumbent upon the petitioner that such a showing be made. In this case it has not been shown that the petitioner and its officers were absent when the affidavit was executed. The affidavit itself fails to so state and there is no allegation in the petition to that effect. Furthermore, the mandate plaintiff claims was given to Mr. Davies was an admission that Mr. Clark, the officer in charge of plaintiff's affairs, would testify, if present, that he instructed and authorized Mr. Davies to have suits filed against defendants and "to prepare the necessary and incidental affidavits in connection therewith." It was not an express mandate to sue out a writ of sequestration, as is contemplated by article 2997 of the Revised Civil Code, and which reads in part as follows:

"Thus the power must be express and special for the following purpose: * * * To make a transaction in matters of litigation; and in general where things to be done are not merely acts of administration, or such as facilitate such acts."

In Wallace v. Byrne, 17 La. Ann. 8, the court said, "a mandate must be express in or-

der to sue out a writ of sequestration." The entire opinion in that case is as follows:

"Plaintiff appealed from the judgment of the lower court, setting aside, on motion of defendant, a writ of sequestration issued in this case.

"One of the grounds of the motion is, that the affidavit for sequestration is informal and insufficient.

"William Pyne, who is no party to this suit, made the affidavit; but in no part thereof does he state that he had authority from plaintiff to make such an oath.

"There is no allegation in the petition stating such agency; nor any evidence whatever thereof.

"Such agency must be special (see Civil Code, 2966), and there must be evidence thereof produced to the court, by affidavit or otherwise, before a writ of sequestration can be sued out by an agent."

The affidavit for the writ of sequestration was insufficient for the reason it was not executed by an officer of plaintiff company, authorized by subdivision 7 of section 35 of Act No. 250 of 1928, and said officers were not shown to be absent at the time the affidavit was executed; and for the further reason that the mandate to Mr. Davies was not express and special authorizing him to sue out a writ of sequestration, he not being at the time the president, vice president, or manager of the plaintiff company (subdivision 7 of section 35 of Act No. 250 of 1928).

Therefore the judgment of the lower court, in so far as it dissolved the writ of sequestration, is correct. The judgment further ordered plaintiff to pay all costs of the issuance of the writs of attachment and sequestration, the costs of the custody of said property while under seizure, and, generally, all costs arising from and becoming due because of said writs of attachment and sequestration. This part of the judgment is correct. It further decreed that the defendant Mack-Jourden Company have judgment against plaintiff in the sum of $100 as attorney's fees, as damages for the wrongful issuance of said writs. The minutes show the damage was prorated at $50 for the writ of attachment, and $50 for the writ of sequestration. The damage of $50 for wrongful issuance of the attachment is correct for the reason that plaintiff was not entitled to an attachment, but that is not so of the writ of sequestration. It is clear that plaintiff was entitled to the sequestration and plaintiff did not abuse its right to sequester; it merely failed to get the benefits thereof because of its error in having the affidavit signed by Mr. Davies, instead of the president, vice president, or manager of the plaintiff company. Therefore, the claim for attorney's fees for the wrongful issuance of the sequestration is rejected. Bass v. Baskowitz, 170 La. 779, 129 So. 201; Phelps & Co. v. Boughton, 27 La. Ann. 592.

In that respect, the judgment of the lower court will have to be amended.

Plaintiff filed in this court a plea of estoppel, based upon admissions by defendant in letters which are filed in evidence. There is absolutely no merit in the plea and same is overruled.

It is therefore ordered, adjudged, and decreed that the former judgment of this court is recalled and set aside in toto; it therefore follows that the judgment of the lower court is amended by reducing the amount of damages allowed as attorney's fees from $100 to $50, and as amended, the judgment is affirmed; costs of appeal to be paid by appellee.

PALMER, J., concurs.