EASTERN DIS.
*Febrnary,* 1834.

ZACHARIE
*vs.*
BLANDIN.

---

## ZACHARIE *vs.* BLANDIN.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a partnership, as to a single transaction, exists between two commercial firms, in an action by one firm for a settlement as to that transaction, it is not necessary to make all the members of the other firm defendants; especially where some of them do not reside within the juristiction of the court.

In such a copartnership the actual amount only which one of the firms may have paid on the merchandise owned in partnership, for duties in a foreign port, will be allowed to the firm paying it; and the court will not inquire whether that amount was expended in bribing the custom house officers of the port where the duties were paid.

Where the consignee paid the duties in depreciated government paper, on the consignment on joint account, solely at his own risk, and not at the instance and request of the consignor; held that the consignor was entitled to an equal share of the gain, by that mode of payment.

EASTERN DIS.
February, 1834.

ZACHARIE
vs.
BLANDIN.

The signing of an account by one of the parties acknowledging its correctness, is not conclusive against a a correction of gross errors in fact or mistakes, as to the legal rights ot the parties.

This action was brought by James W. Zacharie, as surviving parter of J. W. Zacharie and David Patterson, trading in New-Orleans under the firm of J. W. Zacharie & Co. It was alleged that the defendant, Manuel Blandin, of Tampico, in the Republic of Mexico, was, in April, 1829, a member of the firm of Harrison, Brown & Co., of Tampico, of which firm one member, Thomas Harrison, has since died, and the other member, George J. Brown, was at the institution of the suit in England.

On the 16th of April, 1829, the firm of J. W. Zacharie & Co., shipped to Harrison, Brown & Co., on joint account, a quantity of merchandise, amounting, as per invoice, to thirteen thousand three hundred and twenty-seven dollars. The consignees sold the merchandise, and the gross proceeds amounted to upwards of fifty-five thousand dollars. The petition charges that the consignees remitted to the shippers the sum of eight thousand four hundred and seventy-nine dollars, less the export charges, and that there should have been remitted the further sum of six thousand dollars.

The petition alleges that this difference arose from the consignees having overcharged the amount of duties, and from having charged them at their full value, when, in truth, they were paid in a depreciated currency, the benefit of which the said consignees retained to themselves; from overcharging commissions, storage, packing, transportation to the interior and expences of remitting the money, which charges, it is alleged, were incorrect, illegal and contrary to their agreement, which was to share the whole profit of the adventure.

The shipment consisted of one hundred and sixty-three bales of domestics. The statement at the beginning of the invoice is in the following words: "Invoice of domestics, shipped by J. W. Zacharie & Co., on board schooner

Correo, Tucker, master, for Tampico, for joint account and risk of the shippers and Messrs. Brown, Harrison & Co., of said place, and to them consigned."

A curator *ad hoc* was appointed. He excepted to his appointment as illegal, the case not being one in which the appointment could be made.

The attorney for the defendant appeared and excepted that due and legal service of the petition and citation had never been made on the defendant, and that the plaintiff had no right to institute the suit as survivor, and in the manner and form in which it had been instituted.

Hugh G. Barclay, one of the heirs, and curator of the absent heirs of David Patterson, deceased, filed his petition of intervention, and was admitted a co-plaintiff in the action.

The judge *a quo* sustained the exceptions of the defendant's attorney and dismissed the action. On appeal, the Supreme Court reversed this decision, and remanded the cause for further proceedings. *Vide* 4 *La. Rep.* 154.

The defendant then filed his answer. He denied the right of the parties respectively to sue him in the manner and form pursued, or that the said Barclay was heir and curator, as alleged.

He averred that the interest of J. W. Zacharie & Co., had been duly accounted for to them, and that the whole matter in relation to the assignment, had been finally closed and adjusted between the two firms. That on the settlement, an account current of sales was exhibited, and was acknowledged by J. W. Zacharie & Co., by David Patterson, one of the firm, duly authorised. He added the general denial.

In his supplemental answer he alleged that in the account of sales rendered, the sales were considered as having all been made for cash, on the supposition that the proceeds of the sales on credit would be duly realised; that there remained several debts of the concern still outstanding, and that many of the debtors, though in good standing when the sales to them were made, had since become insolvent. He

ZACHARIE
*vs.*
BLANDIN.

prayed that the plaintiff might refund his portion of the lost debts.

Upon these pleadings, the parties went to trial.

*Bosque*, for the plaintiff, testified, that in 1829 and 1830, part of the duties on goods imported into Mexico, were allowed to be paid in government paper, (*libranzas*,) taken at par. Previous to March, 1830, the value of that paper had ranged from fifteen to thirty per cent. discount. There was risk in receiving that paper.

*Dufart*, for the plaintiff, testified, that in 1829, one half of the duties were payable in that paper at par, which could then have been purchased at a discount of forty per cent. There was then a great risk in buying *libranzas*, owing to the unsettled state of the government, arising from the then expected Spanish expedition directed against Tampico. The government would at times receive the *libranzas* in pay for duties, but at other times they were refused.

*Lizardi*, for the defendant, testified, that the charges on shipping specie in Mexico, are, in the interior, two per cent. discount, for Mexican dollars; from one to two per cent. for escort carriage; from one half to one per cent. commission for shipping, and three and a half per cent. export duty. The charges for sales of goods in the interior are two and a half per cent. commissions for sales, and two and a half per cent. guarantee. No commission is charged for sending the money to the coast. The commission in sea ports is five per cent., and one per cent. storage. If sales of goods are made in the interior payable in the usual currency, a discount of one and a half per cent. is paid for good money.

*Cucullu*, testified, that generally the proceeds of sales of goods sold in Mexico, are not remitted till long after the credit on which they are sold. Seven and a half per cent. commissions on the gross sales are usually paid on goods sent to and sold in the interior of Mexico, including the commissions at the sea port and those of the interior.

*La Rue*, who was a clerk of Harrison, Brown & Co. in

1829, testified, that the domestics composing the consignment, were forwarded to and sold at San Luis, Aguas Calientes and Zacatecas, and sold during the summer 1829; that some of the sales were for cash, and others on a credit; that the rates of the charges were according to the usage and custom of Mexico.   He stated that in May, 1830, he handed a copy of the account current to Patterson, who verbally approved of it, acknowledged its correctness, and expressed his satisfaction as to the remittance of the balance.   Patterson delivered to witness no written authority from the plaintiff, but after Patterson had left Tampico, a letter was found of plaintiff to the defendant's firm, authorising Patterson to effect a final settlement as to that shipment.

The plaintiff had judgment for three thousand four hundred and eighty-five dollars.

The defendant appealed.

*Hennen*, for defendand and appellant, contended that,

1. The transaction between the parties was for a single adventure.   J. W. Zacharie & Co., shipped to Harrison, Brown & Co., a quantity of goods *to be sold on joint account*, the profits to be shared in equal proportions.   The present suit is instituted by J. W. Zacharie & Co., one of the co-partners, against M. Blandin, one of the firm of Harrison, Brown & Co., who were to share one half of the profits, to rectify the errors and overcharges in an account of sales rendered; to compel him to pay over a sum which they aver is due on the settlement of the co-partnership.   *It is therefore a suit between one set of partners, against those of another set.*   If to liquidate the whole transaction, it has been improperly brought; because all the partners have not been joined in the action and made defendants. 1 *Peters' Washington's C. Court Reports,* 435, *Lamulivos' case.* 3 *N. S.* 476, *Faurie* vs. *Millaudon.   Civil Code, arts.* 2080, 2081. 2 *Durnford and East,* 282, *Graham* vs. *Robertson.* If to settle a particular part of the partnership business, it is equally wrong, for no action can be maintained for such

purpose. 10 *Martin*, 433; *Drumgool* vs. *Gardner's heirs.* 11 *Martin*, 427.   *Gow on Co-partnership*, 88. (*Ed.* 1830.)

ZACHARIE
*vs.*
BLANDIN.

2. Should the action be considered as properly brought, and as maintainable in its present form, the defendant, M. Blandin, is liable only for his single share, *i. e. one third*, as one of the three co-partners, to the other two co-partners. One co-partner not being liable to another co-partner, for the portion of the debt of the other co-partners; *solidarity* does not exist here.

3. What is the extent of liability, if any, of the defendant towards the plaintiff?   1. According to the evidence of the plaintiff, the debts were all outstanding, nearly; nothing is due to the plaintiffs, according to the evidence of themselves.   2. According to that of the defendants, the same result must be obtained.

4. To descend to particulars of the accounts.   The first and greatest item, is that of the duties charged.   The co-partnership was a special one, and the partners acted as factors, with respect to each other.   4 *John's Rep.* 266; *Livingston* vs. *Rosevelt.*   Factors, in consideration of the responsibility which they run, are entitled to have the benefit of foreign customs, the payment of which they have evaded. 3 *Salkeld*, 235.   1 *Equity Cases, abridged,* 369.

5. But the amount allowed by the judge below, twenty-five per cent., is erroneous, and is not supported by the evidence.

6. There are errors in the calculation of the accounts, made by the judge below.

7. Interest should be allowed to the co-partners, who advanced the largest amount of funds, to wit: for the payment of duties.

8. But the accounts of Harrison, Brown & Co. are examined by Patterson, authorised for that purpose, and approved, being found correct.   This acknowledgment cannot be revoked, it is binding on the plaintiff, particularly, after all the discussion which had taken place between the parties about the accounts, as appears from the correspondence.

9. Interest allowed by the judgment is erroneous, because the claim of plaintiffs was unliquidated. *Code Practice, arts.* 553, 554.

*Strawbridge* and *Slidell,* for plaintiffs and appellees, contended that:

1. The purchase and shipment by the plaintiffs of the goods, and their acceptance by the house of defendants in Tampico, constituted a contract, partaking of the nature of partnership and of mandate, not perhaps strictly reducible to either. It is a joint adventure, known to the French law as a " *société en participation.*" 4 *Pardessus,* 141.

2. Whether it be a contract of partnership or of mandate, or partake of both, the obligations of the defendant are the same; they both require the most perfect good faith, and the defendant is bound to account to the plaintiffs for a moiety of all the profits and advantages resulting from the adventure, or which he might, with ordinary diligence, have secured. *Domat, Title 8 sec. 4. Pothier, Traité de la Société, chap.* 7, *Nos.* 121, 122, 124. *Civil Code, art.* 2830, 2833. *Pothier, Traité de Contract de Mandat, Nos.* 46, 47. *Civil Code, arts.* 2971, 2972, 2973, 2974.

3. Blandin was properly sued alone, being responsible *in solido* for the debts of his house. If he wished his co-partners joined, he should have pleaded in abatement; he cannot now avail himself of an exception not made in the inferior court. *Code Practice, art.* 333. *Roberts* vs. *Shepherd,* 4 *La. Reports,* 91. *Kempe's heirs* vs. *Hart,* 4 *La. Reports,* 482. *Nicolet* vs. *Breedlove,* 7 *Peters' Reports.*

4. Where the contract of partnership does not determine the shares of profit, each partner is entitled to an equal share. If, then, the contract were of the character the defendant pretends, the division would have been, *per capita* amongst all the partners; but they themselves have divided between the two firms, each one half. *C. C.* 2836.

5. The case of *Wetmore & Co.* vs. *Baker & Swan,* was

undertaking to run a line of stages, by two different firms. It was held that though Wetmore & Co. were partners, and also Baker & Swan, yet there was no partnership between the whole. That the act of one of each of the two partners bound his firm. 9 *Johns.* 309. See also *Post* vs. *Rimberly. Idem,* 471. In 1 *Montague, on Partnership,* it is held in various cases, (see note 111 at page 61, of the notes) that where several persons are partners in trade, and some of them carry on a distant trade, and in such character deal with and become creditors of the other firm, under a joint commission of bankruptcy, proof may be made of their debt *as if they had dealt with strangers. Gow,* 307, 308.

6. The distinction of *minor* partnerships, 1 *Mont.* 219, *compound* partnerships, *Idem,* 178, *inferior* partnerships, *Gow,* 307, 308, 319, is well known to the common law. Their acts may render them all liable to third persons as partners; but as between themselves, the firms are as though they were strangers; a partner cannot prove against a firm, but the minor partnership may. *Cow,* 319. The same principle seems to be countenanced by article 2842 *Civil Code. Pundy* vs. *Hood,* 5 *Martin, N. S.* 626, and *Hazzard* vs. *Boyd,* 4 *Martin's N. S.* 347.

7. Our Code sanctions all agreements not approved by law. Where is the law which forbids two firms from joining in a third, and dividing the responsibilities *per stirpes* instead of *per capita ?* They may be liable as common partners, to third persons, but this does not effect the arrangements made between themselves. J. W. Zacharie & Co., were, then, one party interested one half, Harrison, Brown & Co., another, interested in the same proportion. It follows, as a corrollary, that J. W. Zacharie & Co. were responsible *in solido* to Harrison, Brown & Co. for their gestion of the affair, and *vice versa,* Blandin, then one of the firm of Harrison, Brown & Co., is liable *in solido* to J. W. Zacharie & Co.

8. What is the law with regard to debtors *in solido* in this state ? " The creditor of an obligation contracted *in solido,*

may apply to any one of the debtors he pleases, without the debtor's having a right to plead the benefit of division." *Civil Code, art.* 2089. But, "in joint contracts, all the obligors must be made defendants," *Idem.* 2080. Can language more clearly express the will of the legislator? Is it to be defended by any rules of common law practice? Where our own laws are silent, we may refer for commercial rules to another system, but where they expressly provide for the case, we can look no further. But if we were permitted to do so, the rule of the common law is that non-joinder *must* be pleaded in abatement, *Gow*, 179. 181 *n.*, 146 *n.*, and 147; and this has been settled in *David* vs. *Eloi*, 4 *La. Rep. p.* 107.

MATHEWS, J., delivered the opinion of the court.·

In this case, the plaintiff claims from the defendant a gross sum of six thousand dollars. He obtained judgment in the court below for three thousand four hundred and eighty-five dollars and ninety-eight cents, from which the defendant appealed.

The claim is made in consequence of various overcharges, as alleged by the petitioner, against the defendant, in rendering final accounts, relating to a joint adventure in merchandise sent from New-Orleans to Tampico, in the republic of Mexico, by J. W. Zacharie & Co., to Harrison, Brown & Co., to be sold by the latter for joint account of the two houses. The amount paid for the goods in New-Orleans, and charges for shipping, is thirteen thousand three hundred and twenty-seven dollars. The gross amount of sales, as rendered by the consignees in Mexico, is fifty-five thousand thirty-nine dollars and forty-three cents, which is reduced by charges to sixteen thousand three hundred fifty-nine dollars and eight cents. Half this sum is allowed to the plaintiff, and he now claims six thousand dollars in addition, on account of improper and illegal charges by the consignees. These unjust charges, as complained of, relate to duties on the goods, commissions, storage, packing, transportation from

the sea-board to the interior of Mexico, and expenses for remitting the money back, &c.

In relation to the overcharge on account of duties paid to the custom house officers at Tampico, the principal item arises from the difference in amount caused by the payment having been made partly in depreciated paper of the Mexican government, instead of the whole having been paid as charged in account, in current money or specie.    As to the other charges, alleged to be exorbitant and erroneous, their propriety depends on the custom of merchants in Mexico, the agreement of the parties to the present suit, and evidence of the case in relation to these points.

Before, however, enter.ng on the investigation of these subjects, we must dispose of certain objections made by the counsel for the appellee, to the plaintiff's right to sue in the present form of action.    It is instituted against one only of the partners of Harrison, Brown & Co., claiming judgment against him *in solido*.    The defendant being a partner of this firm, which is commercial, as all the partners are answerable *in solido* to creditors of the house, any one of them may be sued separately.    Considering J. W. Zacharie & Co., in the sole light of creditors, they most clearly have a right to maintain the present suit.    But, if as the truth is, they must be viewed as partners with the house of Harrison, Brown & Co., in this particular transaction, and this partnership be commercial, then it is contended on the part of the appellant, that as the present suit is in character, one for the settlement of accounts, all the partners of the firm doing business in Mexico, should have been made partners to the action.  The partnership of J. W. Zacharie & Co., and Harrison, Brown & Co., may be considered as composed of two parties only by the two companies, and as either of them may be legally represented by a single partner of these separate houses, the defendant in the present instance may legally be called to account for the transactions of his firm.    If, to this consideration, be added the impossibility of making his other partners parties to this suit, as they do not reside within the jurisdiction of the

*Where a partnership as to a single transaction exists between two commercial firms; in an action by one firm for a settlement as to that transaction, it is not necessary to make all the members of the other firm defendants, especially where some of them do not reside within the jurisdiction of the court.*

court, no doubts can be entertained of the legality of the present mode of his suit.

The evidence in relation to the alleged overcharge of duties paid, is not explicit. In the account rendered by the consignees, twenty-five thousand six hundred eighty-four dollars and fifty-three cents, are charged as having been paid. According to a certificate of the collector of the port of Tampico, it appears, if we read it right, that twenty-three thousand three hundred and twenty dollars and fifty-seven cents only were paid at the custom house, which seems to show an overcharge of two thousand three hundred and sixty-three dollars and fifty-six cents, one half of which was made to the prejudice of the plaintiff. Whether this amount was really expended in the exercise of what the merchants of Mexico term economy, but which might bear the harsher name of bribery of the custom house officer, to aid in smugling goods, we consider an indecent inquiry in a court of justice, and shall, therefore, pass the subject in silence, and will consider the sales *bona fidely* paid, as amounting to twenty-three thousand th.ee hundred twenty dollars and fifty-seven cents. Of this amount, the testimony of the cause raises a violent presumption that two thirds were paid in *libranzas*, a species of government paper, which, at the time, was at a discount of about twenty-five per cent. As this means of payment was not procured at the instance and request of the plaintiff, but obtained solely by the consignees, at their own charge and risk, it is contended on their part, that the appellee ought not to be allowed to profit by such payment. We, however, accord in opinion with the judge *a quo* on this point, that as these treasury warrants, if they may be so called, were used in the discharge of a debt, common to both plaintiff and defendant, any benefit resulting ought to be reciprocally enjoyed. As to the charges of commission, we think the court below erred. The goods were shipped to Tampico at the instance of Harrison, Brown & Co., and at the same time an offer was made to J. W. Zacharie & Co., to become equally interested in the adventure, which was accepted, accompanied by a proposition that neither

In such a copartnership, the actual amount only which one of the firms may have paid on the merchandise owned in partnership for duties in a foreign port, will be allowed to the firm paying it, and the court will not inquire whether that amount was expended in bribing the custom house officers of the port where the duties were paid.

Where one consignee paid the duties in depreciated government paper, on the consignment on joint account, solely at his own risk, and not at the instance and request of the consignor; held that the consignment or was entitled to an equal share of the gain by that mode of payment.

the consignors or consignees should charge any commissions. This was refused by the latter, as appears by their letter of the 7th May, 1829, insisting that each party should be permitted to charge the customary commissions of their respective places of residence, and in this mode the business seems to have been finally conducted on both sides. Although the charges on the part of the consignees appear to be exorbitant, the evidence of the case does not authorise us to declare them to be unusual in Mexico.

The goods were transported from Tampico to the interior, and there sold, as appears by accounts of sales, copied into the record. The expenses charged for transportation seem to be very heavy, but nothing shows that they are not such as are customary. It is shown by the evidence, that merchandise is sometimes sold for a kind of currency which is below par, from one and a half to two per cent., and in the winding up of the accounts of sales, a charge is found of four per cent. discount, on account of difference of exchange, freight and escort to the coast. The accounts of sales themselves do not show that the goods were sold for this inferior currency; they must, therefore, be presumed to have been sold for good money, which renders improper the charge for difference of exchange, say one and a half per cent. on forty-nine thousand nine hundred eighty-two dollars, net proceeds of sales in the interior. From the principles above stated, it results that the plaintiff has a right to recover eleven hundred eighty-one dollars for overcharge of duties, one thousand nine hundred forty-three dollars and thirty-seven cents difference between *libranzas* and currency, and three thousand seventy-four dollars and eighty-seven cents difference of exchange, improperly charged, and commissions of plaintiff's cotton goods shipped, amounting to three thousand eight hundred sixty-one dollars and fifty-four cents.

The signing of an account by one of the parties acknowledging its correctness, is not conclusive against a correction of gross errors in fact, or mistakes as to the legal rights of the parties.

As to the approval of the acts by Patterson, a partner of the house of J. W. Zacharie & Co., the only evidence in support of it is found in the answers to interrogatories of a brother of the defendant. The accounts are not signed by the person said to have acknowledged their correctness, and

even if they had been, such approval ought not to be held as <span>Eastern Dis.<br>*February*, 1834.</span> conclusive against a correction of gross errors in fact, or mistakes as to the legal rights of the parties.

ERWIN ET ALS.<br>*vs.*<br>ORILLON.

Why, then, any of the money for which the goods were sold remains uncollected at this time, does not appear from the evidence. The firm of Harrison, Brown & Co., by remitting the full amount of the sum, which, according to the estimate, was due to the plaintiffs, seem to have virtually agreed that collection has been duly made, or that they took on themselves the responsibility of collecting.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, reversed and annulled, and it is further ordered, adjudged and decreed, that the judgment be here rendered in favor of the plaintiff and appellee, and against the defendant and appellant, for the sum of three thousand eight hundred sixty-one dollars and fifty-four cents, with costs in both courts.