## HARRIS, Widow of BOOTH, v. RHEA et al.

### No. 14297.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1932.

Legier, McInerny & Waguespack, of New Orleans, for plaintiff.

John C. Hollingsworth, of New Orleans, for defendants.

WESTERFIELD, J.

Plaintiff claims the sum of $4,630.60 for physical injuries and medical expenses resulting from an accident alleged to have been caused by the negligent operation of an automobile in which she was a passenger. The suit was brought against Buford Rhea, the owner of the car, and Mrs. Rhea, his wife, the driver at the time of the accident, and resulted in a judgment below against Buford Rhea alone in the sum of $1,375.60. Both parties have appealed from the judgment.

Defendant denies liability upon the ground that Mrs. Booth, the plaintiff, was guilty of contributory negligence. The quantum is claimed to be excessive.

It appears that on the day of the accident Buford Rhea had been working on a boat owned by him, which was located in Bayou St. John, near Spanish Fort, and that Mrs. Rhea invited plaintiff, her grandmother, to drive out to the boat with her, intending to bring her husband home, and, at the same time, show the boat to Mrs. Booth. Rhea did not return with them, however, and Mrs. Booth, Mrs. Rhea, and a small child of Mrs. Rhea, started home together, with Mrs. Rhea driving and the child and its greatgrandmother, Mrs. Booth, in the rear seat. As the car reached a point midway between the Southern Railway bridge and the Soldiers' Home, on what is known as the Spanish Fort road, which meanders along the banks of Bayou St. John, the front wheels struck a rut, causing the car to swerve sharply to the right and collide with a telephone pole and injure Mrs. Booth.

The basis of the plea of contributory negligence is the alleged duty of Mrs. Booth to protest against traversing a roadway covered with ruts and in the condition of the old Spanish Fort road, which had been practically abandoned. It is said that the danger of riding on such a thoroughfare was obvious to any one, and that Mrs. Booth should have warned her granddaughter, and, failing to persuade her against driving on the road, she should have gotten out of the car. We are referred to Blashfield's Cyclopedia of Automobile Law, vol. 2, p. 1098, where the author expresses the following views: "Whether a passenger is negligent in not having the car in which he is riding stopped, so that he may leave it to escape an impending collision, must depend upon the circumstances of the case. Where the road becomes dangerous, or the speed of the machine in which one is riding as a passenger or guest is unlawful, or the driver is otherwise careless or reckless in his conduct, and this is known to the passenger it is his duty, in the exercise of ordinary care, to protect himself from injury, to caution the driver of the danger, protest against it, and, unless delivered from it, to quit the car if that may be done with safety, or to direct that the vehicle be stopped, and, when stopped, get out of the car."

Whatever may be the force of the authority quoted, it can have no application here, for there is no showing of unlawful or reckless driving, and, while the road is proven to have been in bad condition, it was passable and might be safely traversed by the exercise of such care as the condition of the road required. But, in any event, the proximate cause of the accident, as appears from testimony adduced by defendant's counsel, was the failure of Mrs. Rhea to keep a proper lookout. She testified that, as she was traversing the road adjacent to the Bayou, a boat attracted her attention and she exclaimed to her grandmother: "Look—that is the way we will drive down the Bayou in a week or two." As she looked toward the boat, the car struck the rut, hit the post, and injured plaintiff. The trial court imputed the accident to this incident, and we are of the same opinion.

As to the quantum, Mrs. Booth suffered a laceration in the right parietal region of her scalp about three inches in length, a cut over her nose extending from the right eye-

brow and turning down toward the bridge of the nose. The "inner canthus" of her eye was injured, involving the lacrymal duct, causing tears to flow down her check for several days. Her abdomen was injured, her lip cut, and her physician believed that she had suffered a fracture of one of her ribs on the right side, but the evidence failed to establish that fact, and, on the contrary, it is shown that there was no fracture. She remained in bed for two weeks, and was under medical treatment for a period of three months. Her injuries were painful and aggravated somewhat because of her advanced age. She was 80 years of age at the time of the accident. However, there are no permanent injuries. Her expenses, including her doctor's bill, amounting to $125.60, are not in dispute. The question of what should be allowed for pain and suffering is always perplexing because of the intangible character of the values to be assessed. The frequent necessity of fixing awards in these cases has not resulted in any rule or formula to aid us. Some consistency must be attempted, but we are conscious that many irreconcilable awards have been made. For instance, we are referred to cases by counsel for both plaintiff and defendant which seem to present similar facts, and which apparently would justify both a larger and a smaller amount than that fixed by the court a qua. We will not attempt to compose these differences, and will accept the amount fixed by the judge a quo, for we have no confidence that, by disturbing his judgment in this particular, we would do more substantial justice in the premises.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.