**KLOTZ et al. v. TRU–FRUIT DISTRIBU-
TORS et al.** *

No. 16636.

Court of Appeal of Louisiana. Orleans.

April 19, 1937.

*Rehearing denied May 17, 1937.

594

Richard A. Dowling, of New Orleans, for appellants.

Harry McEnerny, Jr., of New Orleans, for appellees.

JANVIER, Judge.

This is an action in tort. Mr. and Mrs. Albert Lee Klotz seek recovery for the death of their minor son, Thomas Clifford Klotz, who died as the result of being run over by the right rear wheel of a motortruck belonging to Davis Brothers, a partnership, the boy, according to plaintiff's petition, having been knocked from a bicycle on which he was riding by a door of another parked truck belonging to Tru-Fruit Distributors, also a partnership, when the said door was suddenly and negligently opened just as the boy on the bicycle reached a position alongside the parked truck. Solidary judgment was sought against Davis Brothers and the individual members of that commercial partnership and also against Tru-Fruit Distributors, also a commercial partnership, and its individual members, Brooks Morgan, at that time a resident of this city, and Donald Morgan, who was and is a resident and citizen of the state of Florida, and who has not been served personally with citation. Davis Brothers and the individual members of that commercial house have, for $500, effected a compromise settlement with plaintiffs, who, in the compromise, as they are authorized by law to do, have reserved all of their rights against the other defendants. Therefore, we have no longer any concern with the claim against Davis Brothers except to take into consideration the amount paid by them in compromise, if it becomes necessary in assessing the remainder of the damage against any of the other defendants.

Tru-Fruit Distributors, though domiciled in the state of Florida, was at the time doing business in New Orleans and was represented here by Brooks Morgan, one of the partners. The record shows that citation of the partnership, Tru-Fruit Distributors, was made "by personal service on Brooks Morgan, member of firm" and that the citation directed to Brooks Morgan was served on him "in person." But we find in the record no return showing that citation was served here or elsewhere on Donald Morgan, and counsel concede that no such service of citation was made. They maintain, however, first, that no service of citation on him was necessary, since he was a member of the commercial partnership on which citation was properly served, and, second, that he, by voluntarily appearing to challenge the jurisdiction of the courts of Louisiana, has waived his right to contend that he was not properly brought into court. When citation was served on Brooks Morgan and on the partnership, both of these defendants and also Donald Morgan filed an exception to the jurisdiction of the court ratione personæ, basing the exception on the allegation that "your exceptors * * * are not residents nor * * * domiciled in the City of New Orleans or in the State of Louisiana, but * * * are residents and citizens of the City of Tampa, State of Florida," and it is this appearance which counsel for plaintiffs argue constitutes a waiver by Donald Morgan of his right to object to being brought into court here.

The pleas to the jurisdiction were all overruled, and, after trial on the merits, solidary judgment was rendered against Tru-Fruit Distributors and the individual partners for $5,500, with interest and costs. All have appealed.

That a commercial partnership, doing business here, though domiciled elsewhere, may be sued here, we entertain no doubt at all. Paragraph 2 of article 165 of our Code of Practice provides that: "*Partnership.* In matters relative to partnership, as long as the partnership continues, in all suits concerning it the parties must be cited to appear before the tribunal of the place where it is established, or if there are several establishments, before that of the place where the obligation was entered into."

Our Supreme Court, in Rester v. Moody & Stewart, 172 La. 510, 134 So. 690, 691, said: "The contractors, Moody & Stewart, compose a partnership which has its domicile in the state of Mississippi. But it came to Washington parish and there entered into a contract to build a road in that parish, and when this suit was filed the partnership was in that parish, where the suit was brought, and service was made on J. O. Stewart, one of its members. The suit was properly brought

against the partnership in Washington parish."

■ Since the suit against the partnership might be brought in this state and in the parish in which the act on which the action was founded was committed, it next becomes necessary to consider whether service on one of the members of the partnership was sufficient to bring the partnership into court, and an affirmative answer to that question is found in paragraph 4 of section 1 of Act No. 179 of 1918, which reads as follows: "Process directed to a commercial partnership * * * may be made personally upon any member of the partnership wherever found in the parish."

In the Rester Case, from which we have already quoted, the Supreme Court referred to the statute of 1916 and said that, as a result, the defendant partnership was properly brought into court by service of citation "on J. O. Stewart, one of its members."

■ That Brooks Morgan may also be sued here, since he was found and served here, is equally obvious, for, since he is a member of a commercial partnership and, with his partners, is solidarily liable for the partnership debts, he may be sued with the partnership wherever it may be sued if citation may be made upon him there.

But, whether the other party, Donald Morgan, neither domiciled nor found here, may be personally and individually brought into court because of his being one of the members of a commercial partnership which is sued here, is entirely a different question. It is conceded, of course, that if the partnership itself may be sued here, his interest therein may be affected by a judgment against it. But the contention is that, separate and apart from his interest in the partnership, there may not be a personal judgment against him, since the courts of this state have not obtained and cannot acquire jurisdiction over him in personam.

Conceding that, ordinarily, a defendant may be sued only at his domicile, plaintiffs maintain that, because of the provisions of paragraphs 2 and 6 of article 165 of our Code of Practice, a member of a commercial partnership may be sued wherever citation may be had upon the partnership itself. Paragraph 2 we have already quoted. Paragraph 6 reads as follows: "*Joint or Solidary Obligors.* When the defendants are joint or solidary obligors, they may be cited at the domicile of any one of them."

■ It is true that the defendant partnership is a commercial one and that, therefore, the individuals who compose it are solidarily liable for its obligations and also that the tort which created the "obligation" was committed in the city of New Orleans. But we cannot be persuaded that, so far as the individual members of the partnership are concerned, that paragraph of the article of the Code of Practice can be given effect beyond the borders of the state of Louisiana. Counsel, we think, confuse "venue" of a suit against a commercial partnership and its members with the "jurisdiction" of the courts of the state. A partnership, as has often been said, is a legal entity separate and apart from the members which compose it.

"Under the civil law, which prevails in this state, a partnership is a legal entity entirely separate and distinct from the persons who compose it, and may have its own creditors and debtors to the same extent as the individual partners." E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 84 So. 898, 899.

"Under the law of Louisiana a commercial partnership is an entity, capable of being sued, is brought into court as defendant by service of citation upon one of its members, and while the ultimate liability of the partners is in solido,—i. e., joint and several,—they, during the life of the partnership, cannot be charged individually except through the partnership; that is, during the life of the partnership a partner is, like a corporator in a corporation, liable and made to respond individually only through a judgment against the intellectual being of which he is a component part." Liverpool, B. & R. P. N. Co. v. Agar (C.C.) 14 F. 615. See, also, Newman v. Eldridge, 107 La. 315, 31 So. 688; Stothart v. Hardie & Co., 110 La. 696, 700, 34 So. 740; Smith v. McMicken, 3 La.Ann. 319, 322.

■■ Therefore, when the partnership came into Louisiana to do business, it subjected itself to the jurisdiction of the Louisiana courts; and, having done so, it became subject to Louisiana law and to article 165 of the Code of Practice to the extent that that article controls the "venue" of suits against persons within its borders. But the individual members of the partnership, except those within the

state, did not, except to the extent of their interest in the partnership, subject themselves to the jurisdiction of the Louisiana courts, and, therefore, to extend the provisions of the article so as to interpret it as granting the right to plaintiffs to sue, personally, individual members of foreign partnerships, which members may not be found within the borders of the state, and to render personal judgments against them would, we think, be to deprive those individuals of their right to due process of law, for, " * * * following the decision by the United States Supreme Court in *Pennoyer v. Neff* (95 U.S. 714 [24 L. Ed. 565]), it is now well settled (as it well must be) that the courts of this State have no jurisdiction to entertain actions brought against non-residents unless they are personally cited in Louisiana, or the action involves a 'res' over which the court has jurisdiction. * * *" Tulane Law Review, vol. 10, No. 4, p. 527. See, also, *Latham v. Glasscock*, 160 La. 1089, 108 So. 100; *Andrews v. Sheehy*, 125 La. 217, 51 So. 122; *Flexner v. Farson et al.*, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250. Since the courts of the state have jurisdiction over the partnership by reason of the fact that it has come into the state to engage in business, judgment, of course, as we have shown, may be rendered against it. But since, also, the partnership, as has also been shown, is an entity separate and apart from its members, it follows that the bringing of the partnership into court does not bring in the partners.

Nor can it be said that the partnership is the agent of the partners to the extent that service on it can have the effect of bringing into court the individual partners against whom judgment in personam is sought, and, therefore, to this situation cannot be applied the rule " * * * that service of process. upon the Louisiana mandataries of non-resident principals, in cases where such mandataries have been expressly authorized to be served with, or accept, such process, is considered as having the same effect as if such principals were personally served with process." Tulane Law Review, supra.

All that paragraph 6 of C.P. art. 165 accomplishes is to grant to the court of the parish in which one joint or solidary obligor is found "venue" of the action and to permit that court to proceed to render judgment against all of the solidary obligors over whom the state of Louisiana may

have jurisdiction. It does not and, as we have said, we think it could not, give to the courts of this state jurisdiction to render judgments in personam against nonresidents not found within its borders.

All that paragraph 2 of the article accomplishes is to give to the court of the parish in which the partnership is established, or in which "the obligation was entered into," venue of the action against the partnership and all of its members over whom the state may have jurisdiction. It does not, any more than does paragraph 6, give jurisdiction over nonresidents not found within its borders. This conclusion was twice reached in federal courts sitting in Louisiana. In *Martin v. Meyer et al.* (C.C.) 45 F. 435, one of the defendants, Solomon Meyer, was a citizen of the state of New York and was not served personally in Louisiana. It was attempted to hold him personally liable in Louisiana because of his membership in the commercial firm. The court said: "The plaintiff, a citizen of Mississippi, on an obligation of the commercial partnership of V. & A. Meyer, domiciled in Louisiana, may sue in this court Victor Meyer, a citizen of Louisiana, Adolph Meyer, a citizen of Louisiana, and the partnership of V. & A. Meyer, so far as the said partnership is capable of being sued and standing in judgment; but cannot sue Solomon Meyer, a citizen of the state of New York."

In *Empire Rice Mill Company v. K. & E. Neumond* (D.C.) 199 F. 800, 801, plaintiff brought suit "against a commercial partnership * * * domiciled in New Orleans * * * composed of Karl Neumond and Eugene Neumond, both citizens of the empire of Germany, and against its individual members." The citation was directed "to K. & E. Neumond, a commercial firm, and Karl Neumond and Eugene Neumond, the individual members thereof." The citations were served on Karl Neumond in person in the city of New Orleans. Eugene Neumond contended that even though judgment might be obtained against the partnership and against Karl Neumond, no personal judgment might be obtained against him. The court said that "there was proper service of the firm and of Karl Neumond, and both can stand in judgment," for the reason that "when suit is so brought * * * on a debt of the firm * * * a citation, addressed to the firm and served on one of the partners, will bring in.

the firm and the partners served." But, when it came to consider the question of whether the absent and uncited defendant could be brought into court merely by reason of his membership in the commercial firm the court said: "The exception of Karl Neumond and of the firm will be overruled, and the exception of Eugene Neumond * * * will be sustained."

We think that neither of those cases can be distinguished from the case at bar, for, surely, no distinction results from the fact that in each of them the partnership was domiciled in Louisiana, whereas the partnership in the case at bar was domiciled elsewhere and doing business in Louisiana.

In Snyder et al. v. Davison et al., 172 La. 274, 134 So. 89, 91, the Supreme Court of this state held that a suit against a commercial partnership and its individual members might not be maintained in a state in which one of the partners was by chance served with process. It is true that there the partnership was not engaged in business in the state in which the individual partner was served, but, if the rule contended for here by plaintiffs is sound, then the mere fact that the partner on whom process was personally served was a solidary obligor with the other defendants would have given to the courts of the state in which that partner was served jurisdiction in personam over all to render judgment in personam.

E. B. Hayes Mach. Co. v. Eastham, 147 La. 347, 84 So. 898, 900, does not set forth a contrary view. True enough, the opinion contains the following statement: "If the alleged partnership was domiciled in Caddo parish, or if it had had a business there, though domiciled elsewhere, it and the present defendants might have been sued jointly there."

But there no question had been raised as to the jurisdiction of the state court to render personal judgment against the partners. The question at issue was whether, during the existence of a partnership, a judgment might be obtained directly against individual members, without the joining in the suit of the partnership itself, and the court held that no such judgment might be obtained and that, since the partnership might be sued only at its domicile, or at the place at which the obligation was entered into, it was only at one of these two places that the individual members thereof might be sued along with the partnership. It is apparent, then, that

the court did not intend to declare that, had the partnership been domiciled in Caddo parish, it and all of the members might have been sued even though the members might not have been served personally.

Rester v. Moody & Stewart, 172 La. 510, 134 So. 690, is likewise a case in which the issue involved the proper venue of a suit against a partnership and the court held that under paragraph 2 of C. P. art. 165 the venue is either the parish of the domicile or the parish in which the partnership is engaged in business and the obligation is entered into. The court found that, since the partnership—a foreign one —had entered into the contract in Washington parish, La., it might be sued there in matters growing out of the contract, and that the citation made on the partnership by service handed to one of its members was sufficient to bring, in the partnership. But nowhere do we find a statement therein to the effect that a personal judgment might have been rendered against one of the partners not within the jurisdiction of the state.

In American Photo Player Company v. Simon, 151 La. 708, 92 So. 307, 308, the Supreme Court considered the question of whether, during the existence of a partnership, the partners might be sued independently of the partnership, and, in holding that they might not be so sued individually and separately, referred to E. B. Hayes Mach. Co. v. Eastham, supra, and quoted therefrom as follows: " 'The liability of commercial partners, while solidary, in the sense that each of them may ultimately be required to pay the whole of its debt, yet is not a primary one. * * * Until the debt is established contradictorily with the partnership, so long as it exists, there is no debt * * * which can be enforced against the individual partner. * * * ' But, 'of course, in such a proceeding the individual * * * liabilities of partners, * * * not made parties thereto by service of process, are not * * * concluded by such decree.' "

It thus clearly appears that a judgment against a partnership does not. carry with it an individual judgment against the partners, who must themselves be sued if a personal judgment is desired. And obviously, they may not be sued unless they can be served. And if they are not cited and process is served only on the partnership, then the partners "are not * * .* concluded by such decree."

Our attention is directed to paragraph 4 of section 1 of Act No. 179 of 1918, to which we have already referred, and it is contended that, as a result of this paragraph, the partnership and the individual members may be brought into court. But a reading of that paragraph shows plainly that it is only the partnership itself which is dealt with and that, though it (the partnership) may be brought into court in the method therein provided, there is nothing in the language to indicate an intention to permit the individual members to be cited unless they are within the jurisdiction of the state and may, therefore, be served within its borders.

Nor can Underwood v. Brook, Mays & Company (La.App.) 146 So. 503, afford any comfort to plaintiffs, since it, too, involves only the question of how a partnership itself may be brought into court.

In Zacharis v. Blandin, 6 La. 193, the court recognized that foreign partners may not be proceeded against personally and referred to the "impossibility of making his other partners parties to this suit, as they do not reside within the jurisdiction of the court."

We conclude that neither service on the partnership nor on the other partner had the effect of bringing in the absent partner to the extent that a personal judgment might be rendered against him.

We next consider the alternative contention of plaintiffs that, even if the absent partner may not have been proceeded against personally in the absence of voluntary appearance, still his challenge to the jurisdiction of the court constitutes voluntary appearance and a waiver of the right to object to jurisdiction.

Of course, it is true that lack of jurisdiction ratione personæ may be waived and, therefore, if plaintiff's argument on this point is sound, then defendant, Donald Morgan, is before the court, having subjected himself to its jurisdiction. But plaintiffs overlook the fact that they have contended that service of citation on the partnership was sufficient to bring Donald Morgan into court, and this is a legal question which he should not be required to decide at his peril. Since personal judgment is asked for, we think that he should be permitted to file a limited appearance merely for the purpose of challenging the jurisdiction. Otherwise he would have to depend upon the court's recognizing its own lack of jurisdiction, or possibly for the remainder of his life, find himself constantly harassed by a judgment of a Louisiana court rendered in a suit in which he had never been actually made a party.

In Snyder v. Davison, supra, the court considered the effect of such a limited appearance. There a judgment had been rendered by an Ohio court and this judgment was made the foundation of a suit here for recognition of that judgment. The defense was that the court of Ohio which had rendered the judgment was without jurisdiction ratione personæ. Plaintiffs countered with the charge that the right to challenge the jurisdiction had been waived by the appearance, even for the limited purpose of challenging jurisdiction. They also contended that the defendants in the Ohio case, when judgment went against them, had asked for a new trial and they pointed to that application as a waiver of the objection which originally had been made to the jurisdiction. Our Supreme Court in effect stated that there could be no question as to the right of the defendant, in such situation, to challenge initially the jurisdiction and devoting its discussion to the question of whether the appearance in application for new trial, without a reiteration of the objection, constituted a waiver, said: "The rule established by the Supreme Court of the United States, and the rule in this state, and, as far as we are aware, the universal rule, is that the question of jurisdiction of a court, ratione personæ, is not presumed to be waived unless the defendant fails or neglects, in his first appearance in the suit, to except to the jurisdiction of the court. If the defendant, being sued in a court that has not jurisdiction ratione personæ, excepts to the jurisdiction when he first appears in the suit, and urges the exception before making any other defense, and if the exception is overruled, he is not compelled to allow judgment to go against him by default, but may thereafter resort to any other appropriate means of defense, without reiterating his protest against the jurisdiction of the court, and without thereby creating a presumption that he has abandoned his exception to the jurisdiction of the court. When a judge has erroneously overruled an exception to his jurisdiction, there is no good reason why the exceptor should continue to remind the judge of his error at every stage of the proceedings, in order to avoid a presumption that he (the exceptor) acquiesces in the erroneous ruling."

We can see no good reason which should prevent a person, against whom personal judgment is sought, from coming into court and presenting his objection to the jurisdiction, provided, of course, he does nothing else which might indicate an intention to yield to that jurisdiction generally. Even though he may not have been cited, if he knows that the suit has been filed, he need not permit the judgment to be rendered and then, for the balance of his days, seek to avoid the effect of the judgment, or, at some future time, go into court to have it declared a nullity because of lack of jurisdiction. Why should he not present his contention concerning jurisdiction and thereby attempt to persuade the court of the absence of right to render judgment against him personally? Surely, by so doing, he cannot be said to have waived his rights in the premises.

In Harvard Law Review, vol. L, No. 6, at page 98, this question is discussed in connection wth the decision in Vaughn v. Love, (1936) 324 Pa. 276, 188 A. 299, the author of the article stating: "Although probably not constrained to do so by the constitution, as it thought it was, the Pennsylvania court nevertheless refused to assume jurisdiction, wisely avoiding a rule which would require defendants either to submit to the jurisdiction of the court on the merits in the event of an adverse ruling, or to run the risk of a default judgment and the difficulties of collateral attack. The limitation on the effect of a special appearance recognized in this decision should serve to prevent unnecessary proceedings by inducing the immediate litigation of the question of jurisdiction."

We conclude that the objection to the jurisdiction filed on behalf of Donald Morgan should have been sustained and next consider the question of whether there is liability against the partnership and Brooks Morgan.

Plaintiffs charge that the driver of the truck of Tru-Fruit Distributors was negligent in several particulars:

(1) That he had parked the said truck within fifteen feet of a fire hydrant in violation of article VIII, § 1, subparagraph (h), which provides that it shall not be lawful for the operator of a vehicle to park such vehicle "within fifteen (15) feet of a fire hydrant";

(2) That he had parked the said truck at an angle to the curb of St. Charles street and not parallel thereto and that its wheels on the curb side, were more than six inches from the curb, and that, therefore, in both said particulars, he had violated the provisions of article VIII, § 13, subparagraph (a), which provides that "except when necessary in obedience to traffic regulations or traffic signs or signals, the operator of a vehicle shall not park such vehicle in a roadway other than parallel with the edge of the roadway, or curb headed in the direction of traffic, and with curb-side wheels of the vehicle within six inches of the edge of the roadway. * * *"

(3) That, without first looking behind and ascertaining whether the opening door would strike any person or vehicle which might be traveling on St. Charles street, he had opened the door just as the young boy reached a position alongside the truck and that this knocked the boy to the ground and under the passing truck of Davis Brothers.

Defendants denied the allegations charging negligence and, in the alternative, alleged that the boy had run into the rear of the stationary truck and that, therefore, even if there was primary negligence in any of the particulars charged, the proximate cause of the accident was the negligence of the boy himself in carelessly running into the truck, which he should have seen and avoided.

That the truck had been parked near a fire hydrant is of no moment. The violation of an ordinance plays no part in the determination of a tort action unless there is causal connection between the violation and the accident. Bethancourt v. Bayhi (La.App.) 141 So. 111; Roby v. Graham, Inc., 3 La.App. 521; Vaughn v. N. O. Ry. & Light Co., 13 Orleans App. 116; Michel Bros., Inc., v. Mallynn, 3 La.App. 69; O'Kelley v. Mocklin, 19 La.App. 541, 140 So. 116; Lopes v. Sahuque, 114 La. 1004, 38 So. 810. We cannot conceive that there could have been causal connection between the fact that the truck was parked near a fire hydrant and the fact that the boy and some part of the truck came into contact.

But we do see that there might be causal connection between the fact that the truck was parked too far away from the curb and the fact that a collision occurred and that, also, there might be causal connection between the fact that the truck was parked at an angle to the curb and the ultimate collision because there could hardly have been a collision had the left side of the truck been parallel with the curb and at the same distance therefrom as were the

sides of the other vehicles alongside which the boy and his bicycle were passing. Therefore, since the record shows conclusively that the truck was parked at an angle and was extended farther out into the street than it should have been had the ordinance been complied with, we hold that there was negligence on the part of the driver in those particulars.

The evidence is conflicting concerning the door on the truck. Only one witness states that the boy ran into the door. A Mr. Maes, who was operating a truck in the rear of the Davis truck, says that "as the boy passed the Tru-Fruit Company truck, the boy and the door of the * * * truck met and caused the boy to fall off the bike under the back wheel of Davis Brothers' truck." No other witness mentioned the open door and even Maes, it must be noted, did not say that the door opened just as the boy reached it, but merely that "the boy and the door * * * met."

It is shown that Tru-Fruit Distributors later removed the doors from its trucks and it is argued that this fact indicates a realization of the probability that such doors may open and create danger and that such realization of danger could only have come from this accident. The explanation offered by defendants for the removal of the doors is that during the warm season the interiors of the closed cabs are very warm. We hardly think that one such accident, even if it had resulted from the opening of the door, would have caused the removal of all doors. Such an accident is obviously of most infrequent occurrence and it does not seem logical to conclude that any such universal policy as the removal of all doors would have resulted from so infrequent an occurrence, which so easily could have been guarded against by special instructions to drivers.

As opposed to the evidence that "the boy and the door * * * met," defendants rely on statements of two employees who were in their truck and who testified that the door was not opened and that the boy rode his bicycle into the rear of the stationary truck after it had been standing parked for some time.. Cusimano, who was alongside the driver, stated that he "heard a slight noise in the back and did (not) pay attention as we hear that so often. * * *" Forster, the operator of the truck, says "I heard a bump on the rear end of my truck" and that "after the accident" he found "a mark on the left rear fender where he had bumped." No witness but Maes claims to

have actually seen the accident and, as we have shown, his statement is not clear.

We believe that the plaintiffs have failed to make it certain that the door opened in front of the boy just as he reached it,, or even that it opened at all.

Much time and space is devoted by counsel for both parties to a discussion of whether the rear or the front of the truck was farther from the curb. We do not see the importance of that question. If either end was out, the evidence shows clearly that it had been there for some time, and we cannot avoid the conclusion that it should have been seen by the boy. Even if it was the open door that he ran into, unless it was opened just before he reached it, he was negligent in not seeing it. The record does not show that there was any emergency, or that in such emergency the boy was called upon to act to avoid danger. He merely failed to see an obvious object in the road ahead of him, and his failure to see was negligence on his part. Harris v. Rhea et al. (La.App.) 144 So. 200; Becker v. Illinois Cent. R. Co. (La.App.) 147 So. 378; O'Rourke v. McConaughey (La.App.) 157 So. 598; Lapeze v. O'Keefe et al. (La. App.) 158 So. 36; Leitz v. Rosenthal (La. App.) 166 So. 651; Raziano v. Trauth, 15 La.App. 650, 131 So. 212; Hutchinson v. T. L. James & Co. (La.App.) 160 So. 447.

Assuming that the violation by defendant's driver of that provision of the ordinance which concerns parking cast upon the defendants the burden of showing that that violation was not the proximate cause of the accident, which cause was the negligence of the boy himself, we believe that they have, by a preponderance of the evidence, successfully borne that burden.

The boy was sixteen years of age, intended going to college the following fall, and, according to his mother, was "very smart." He was fully capable of realizing danger.

The deep sympathy which we feel for the parents of so deserving and promising a youth as young Klotz is shown to have been does not authorize us to disregard the well-established jurisprudence on the subject of contributory negligence.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that plaintiffs' suit as against Tru-Fruit Distributors, Donald Morgan, and Brooks Morgan, be and it is dismissed at their cost.

Reversed.